## Hamilton *versus* Hamilton's Executors.

1. The statute of limitations is applied with the same effect in a court of equity, as in a court of law.

2. Two persons were partners in the single transaction of constructing a railroad, and one of them received the whole of the price for such construction. *Held,* That the other could maintain assumpsit for his share, and that the statute of limitations began to run from the time when such action could have been instituted.

APPEAL from the decree of the District Court of *Allegheny county.*

This was a bill in equity filed by Hamilton *v.* Hamilton's executors, in which it was stated that the complainant, in 1836, entered into a partnership with defendant's testator, for the purpose of erecting and constructing a railroad and dock, at the coal works of Bosby,

[Hamilton *v.* Hamilton's Executors.]

Kramer & Company, and that the partners were to bear an equal proportion of the expense of construction, and share equal profits.

The bill further set out, that the work was constructed according to the contract, and that when completed, the defendant's testator drew the whole contract price, with the exception of $250, and that he retained the same, and had never accounted therefor to complainant. The work was completed and the money drawn *more than six years before bringing suit.* The bill set out that the testator had repeatedly promised *within six years previous to the. bringing of this suit,* to settle with complainant and pay him whatever amount might be due to him.

The bill prayed an account of the partnership transactions, and a decree that the sum found due should be paid to complainant.

The respondents, as executors, denied all knowledge of the merits of the complainant, and set up the defence of the statute of limitations.

The complainant, in support of his bill, proved : 1. The contract of partnership and agreement with Kramer, Bosby and Co., and that the contract price was $1850.

Charles Buckmaster proved that both parties had told him that they were to share equal profits in the construction of the ·road, after deducting expenses.

R. C. Stockton, treasurer of Kramer, Bosby & Co., testified that he paid Samuel Hamilton, the defendant's testator, the *whole* of the money, as coming to the firm of Hamilton & Hamilton for constructing the road, and that Samuel Hamilton receipted for the same.

On the part of the complainant, it was alleged that there had not been any settlement of the partnership transactions between Hamilton & Hamilton.

William Hamilton testified that he was the sole book-keeper of the firm; that there never had been any settlement of the partnership transactions to his knowledge; that no settlement appeared on the books, and that if any settlement had ever been made, he must have known it.

Another witness testified that about five years previous, he was at a tavern in the Diamond, and that Samuel and Robert Hamilton, plaintiff, and defendant's testator, were there; and in the conversation, Samuel Hamilton said to Robert, "I am nearly through with my difficulties, and I will pay all my honest debts, *and I will pay you too.*"

The bill was dismissed, and error was assigned to the dismissal.

*Alden,* for appellant, contended that the statute of limitations did not run as between partners, until *a final settlement* of the partnership accounts, *a ·final disposition of all* the partnership

effects, and a *division* of the surplus, if any, between the partners. *Story on Partnership*, pages 47 to 77, inclusive.   6 *Cowan* 441, Murray *v.* Munford; 1 *East R.* 363, Smith *v.* O'Niell.

*Woods*, for appellees.

The opinion of the Court was delivered February 8, 1851, by

COULTER, J.—The orator complains that the respondents' testator and himself, agreed to build a railroad and dock in 1836, for the sum of $1850, and that in the same year the work was completed, and the respondent drew the money and applied it to his own use. The respondent answers, first, the statute of limitations, and second, that the partnership was settled, and the defendants' testator paid his share.   A chancellor applies the statute of limitation, with the same substantial effect that it receives in a court of law.   There is no reason why disputes should be kept up on fact in equity, after the law has put its quietus upon them.   The question then is, did the statute apply?   The usual remedy at law between partners is the action of account render, unless there be a covenant, or express promise, or mutual settlement, after dissolution.   Whenever a complete cause of action exists, then the statute begins to run, not always from the time of the promise or contract, but from the time the cause of action accrued.

If the liability depends on a contingency, then the contingency must happen before the statute runs, or if damages accrue from negligence or misfeasance, then the statute runs from the time of the act creating the liability, and not from the happening of the damages consequent on the act.   According to the bill, the decedent received the whole of the sum due on the adventure, after the work was finished, and the job ended; this he had a right to do, and by doing it he made himself debtor to the orator for his share.   At that time the orator had a right of action against the testator of respondents, and from that time the statute began to run: 2 *W. C. C. R.* 212, Hourquebies *v.* Girard.

This adventure or contract was a single transaction, for a stipulated price; and one partner having received the whole of the price, the action of assumpsit would lie by the other partner concerned in the adventure, for his share; it was not necessary to resort to the action of account render.   This principle was fully asserted and ruled in Galbraith *v.* Moore, 2 *Watts* 86.   The statute, therefore, began to run from the time the orator could have maintained assumpsit in 1836.

But the testimony, that there was a settlement and adjustment of the claim in the lifetime of the respondents' testator, overwhelmingly preponderates.   In addition to the positive testimony on the subject, the lapse of time affords strong corroboration of the fact.   A factor, who has received goods on consignment, is bound

[Hamilton *v.* Hamilton's Executors.]

to pay over the proceeds and the merchandise not sold on demand; and an action for not accounting does not lie until a demand be made, and from that time the statute runs.

But in such cases, after a reasonable time has elapsed, the jury may presume that the consignor has made a demand, and that the factor has accounted: 1 *Taunton* 572.

The decree dismissing the bill is affirmed.