# Bickel's Appeal.

1. A resulting trust in land can be raised only from fraud in obtaining the title thereto, or from the payment of purchase-money when that title is acquired.

2. In 1841, arbitrators appointed to settle a dispute between certain companies and O., in regard to the Phœnix tract of coal land, made an award to O. In 1842, O. assigned this award to P. as collateral security, for a debt out of which P. was to take his debt and pay over the balance to O. In 1845, O. and P. entered into a written agreement to endeavor to purchase the Phœnix tract, and to divide the profits to arise therefrom. In 1846, P. purchased the lands, took title in his own name and continued in possession until his death, when his devisee took possession and remained therein until 1858. In 1856, the executor of P., in making the final payment for the tract, was credited with the amount of the above award. O. made no claim to any interest in the tract during the life of P., and not until some two years after the legal estate had passed to his devisee, and the executor had no knowledge of O.'s claim when he made the settlement. In 1869, O. filed a bill in equity against the executor of P. and the devisee for an account of a share of the profits of the tract. *Held*, that the devisee held the tract free from any trust for O.

3. The Statute of Limitations is applied with the same effect in a court of equity as in a court of law, and although a bill in equity may have a much wider scope as to parties and the subjects embraced by it than a suit at law, and a court of equity having obtained jurisdiction over the parties may settle, every matter in dispute between them touching the controversy, near or remote, direct or collateral, yet it cannot directly or indirectly reach beyond the statute.

4. O. having a right of action against the executor of P., which arose in 1856, brought suit therefor in 1857. In 1867, O. and the devisee of P. executed an agreement, under the terms of which O., in 1868, discontinued the suit against the executor of P. In 1869, O. filed a bill in equity against the

[Bickel's Appeal.]

executor of P., and his devisee asserting that this agreement was void because the devisee, who was a married woman, had not properly executed the same, and praying that the agreement might be set aside, and O. reinstated in all the rights he had surrendered thereunder. *Held*, that neither as to the executor nor the devisee did the action of 1857 toll the Statute of Limitations which thus began to run in 1856.

February 5th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Appeal from the Court of Common Pleas, No. 2, of *Philadelphia county :* Of July Term 1875, No. 4. In equity.

This cause originated in the old Court of Common Pleas, and in the distribution of the business in the reconstruction of the courts under the new constitution was allotted to the causes to be tried by Court of Common Pleas, No. 2.

The proceedings were as follows : In 1869 John C. Offerman filed a bill in equity against Asa Packer, surviving executor of Robert W. Packer, deceased, and Rollin N. Rathbun and Helena, his wife, which, in substance, averred that in 1841, arbitrators were chosen to settle certain matters in dispute between complainant and the Camden and Amboy Railroad and the Delaware and Raritan Canal Companies, arising out of the purchase of the Phœnix Park tract of coal land ; that said arbitrators made an award of $13,085 to complainant, and directed him to deliver up possession of said land to said companies, which was done ; that on the 18th of February 1842, complainant assigned said award to Robert W. Packer as collateral security for a debt, Packer undertaking to collect the award and apply the proceeds to the payment of his debt, and pay over the balance to complainant; that subsequently, on the 17th of June 1845, complainant and Packer entered into a written agreement to purchase for their joint account the Phœnix Park tract and adjacent coal lands, and to divide the profits to accrue therefrom. This agreement was as follows :—

" It is agreed between John C. Offerman, of Pottsville, and Robert W. Packer, of Reading, Pa., that they jointly and severally agree to and endeavor to purchase the coal lands called the Phœnix Park tract, containing eight hundred acres, lying in Schuylkill county, on the west branch of the Schuylkill river; these lands belonging to the Camden and Amboy Railroad and Delaware and Raritan Canal Company, and it is understood that they divide the profit accruing out of the said lands. It is also agreed that Offerman and Packer look out for a person to help make the first payment on the lands, and should we agree to renew the Offerman Railroad and Mining Company, or do otherwise, it is agreed that Offerman shall give one-fourth of his interest to the said Packer for considerations Packer signed to the said Offerman, some time hence, in the award Offerman obtained by arbitrators, in

[Bickel's Appeal.]

Schuylkill county, in 1841, against the Camden and Amboy Railroad and Delaware and Raritan Canal Company.

JOHN C. OFFERMAN,
R. W. PACKER.

Witnesses present—
    H. OFFERMAN,
    C. BARRINGTON.
Philadelphia, June 17th 1845."

The bill then further averred that on the 30th of May 1846, Packer entered into articles of agreement with parties representing the aforesaid companies, agreeing to pay $81,300 for said lands, the times of payment and the amounts being therein stipulated; that said purchase was made in pursuance of the agreement between complainant and Packer in June 1845, and that Packer took possession of the lands for their mutual advantage and profit; that Packer died in October 1848, having made his will, which was proved in Berks county, whereby he devised said Phœnix Park tract to his daughter, Helena, intermarried with Rollin N. Rathbun, and appointed Asa Packer one of his executors; that at the time of his death Robert W. Packer had not received a conveyance of the land, and had paid but a small portion of the purchase-money, and that from the income of the land; that in 1850 $66,000 of the principal, with interest, were still due; that neither Packer nor his heirs ever paid any of the purchase-money, except from the profits accruing from the lands and the amount credited said Packer by said companies on the award in favor of complainant; that in 1856 Asa Packer, surviving executor of Robert W. Packer, made a final settlement with the Camden and Amboy Railroad, and a conveyance of the land was then executed to Helena Rathbun, and that in said settlement, as part consideration therefor, the estate of Robert W. Packer was credited with the award of arbitrators of February 1841, and that said settlement was made without notice to or knowledge of complainant; that Rathbun and wife conveyed said lands to a mining company for $300,000; that neither Packer, during his life, nor Rathbun and his wife, nor the executors, having accounted to complainant for the amount of said award or for the profits and value of the one-half of said tract of land, complainant applied for relief to the Orphans' Court of Berks county, when issues were framed and sent for trial to the Court of Common Pleas of said county to ascertain the facts; that while said issues were pending, on January 30th 1867, complainant was induced to sign an agreement between himself and said Helena Rathbun and her husband, whereby complainant agreed to surrender, without any consideration whatever, the agreement between Packer and complainant of June 17th 1845, as to said tract of land, and to discontinue all suits then pending against Rathbun and wife and Asa

Packer, executor, and to refer all matters arising under the award of arbitrators to A. G. Green, Esq., whose award was to be final; that said agreement of 1867 is null and void, because it was signed by R. N. Rathbun "for self and wife," and was never signed and acknowledged by said wife; that on April 3d 1867, complainant notified the parties interested and the referee that he repudiated said agreement, and would not abide by the report of the referee, nor be bound by any acts of his attorney in the premises; that nevertheless said referee proceeded to consider the case, and awarded complainant the sum of $3195.96, and complainant's attorney, on July 8th 1868, discontinued his suit against the estate of Packer, commenced March 17th 1857, for the amount due him out of the award of arbitrators assigned to Packer; that said amount is entirely insufficient to pay the indebtedness of said Robert W. Packer and those claiming under him to complainant, and that he has refused to accept the same or recognise the authority of the referee. The bill then prayed,

1. That the agreement of 1867 might be declared void and complainant reinstated to the rights he may have had prior to entering into the same.

2. That defendants be ordered to restore to complainant the agreement of June 17th 1845, between complainant and the said Robert W. Packer, which was surrendered under said agreement of compromise of January 30th 1867.

3. That defendants be decreed to account to complainant for one-half of the profits which accrued yearly from said land, and for one-half of the profit on the sale thereof.

4. That the defendants be decreed to account for such sum or sums of money as they or the said Robert W. Packer in his lifetime received for your orator.

The answer of Asa Packer set forth that he was discharged as executor, by the Orphans' Court of Berks county, on the 30th of January 1865, and that since that time he had had no connection with nor knowledge of the estate. The answer of Rathbun and his wife admitted the purchase of the lands in dispute, on the 30th of May 1846, and averred that said Packer entered into exclusive possession thereof, and retained said possession in his own name and under claim of title in his own right, until his death in 1848, and that thereafter his daughter Helena, as his devisee, entered and remained in possession, and that no demand was made upon her for a share of the profits until long after the legal title had been conveyed to her in 1856. It denied that Packer made the purchase in pursuance of the agreement of 1845, or that he took possession for their joint benefit, or that any money was contributed by complainant towards the purchase, and averred that the settlement of 1856, in which the award of 1871 was accredited to R. W. Packer's estate, was made without the knowledge of complainant, without any

[Bickel's Appeal.]

knowledge on the part of the executors that complainant had any such claim upon the award, and that said claim was not made upon them until after said settlement; that complainant being indebted to the estate of said R. W. Packer, in an amount larger than that realized from the award, the executor refused to pay any money on account of said award, when plaintiff brought suit therefor, in the District Court of Philadelphia, to March Term 1857, against Asa Packer, executor, and in 1858 another suit at Nisi Prius against Asa Parker individually, for the same cause of action, in which last suit complainant was nonsuited in 1860; that under the agreement of 1867, the action of 1857 was discontinued on July 8th 1868. The answer also suggested that whatever claim complainant might have had against the executors of Packer, for the award of 1841, it was barred by the Statute of Limitations, which had begun to run in 1856, at the time of the settlement.

William J. McElroy, Esq., the master to whom the cause was referred, reported, inter alia, as follows:—

" The conclusion which I have arrived at, on a careful consideration of the facts in evidence, is, that Mr. Packer did not purchase these lands in pursuance of the agreement of 1845, but in his own right; that Mr. Offerman, judging him by his own words and conduct, so understood the purchase; and that there was no express trust of the lands, or any portion of them or their proceeds, in favor of Offerman.

" It is to be observed also, that neither the executor nor Mrs. Rathbun, when the purchase-money was settled and the legal title conveyed to her in 1856, knew that Offerman had any interest in the award. All they then knew was that he had assigned it absolutely to Packer by a formal paper executed in 1842. So that they were not knowingly using Offerman's money in paying for the lands, but that which they believed to be a part of Packer's estate. And this they had a right to infer, for Offerman had so declared in writing, and up to this time had not warned them that it was not so. Even if they had known all the facts, there was no trust, as respects the money due on the award, which would entitle the owner of it to follow it into the land and claim the land in place of the money. Nor could an executor, by using trust funds to pay purchase-money due by his testator, create a resulting trust in favor of the owner of the money, for that would enable him, by his own misconduct, to change the title of his testator's lands. Offerman, however, never made any such claim, but asserted his right to the money, and sued for its recovery. In addition to this, if by the use or application of this money, in any way, a trust arose by implication of law, it was, long before the filing of this bill, barred by the statute.

" I therefore report that there has been no trust, express or implied, of these lands or their proceeds, established in favor of

[Bickel's Appeal.]

the plaintiff, John C. Offerman, and that he is not entitled to an account of the profits of the lands."

He further reported : "With regard to the effect of the Statute of Limitations, it would seem that the complainant's right accrued as soon as he knew that the award had been collected, and the statute then began to run. This could not have been earlier than 1856, and this is the period fixed by the answer as the time when the defendants used the award in their settlement with the railroad company. On the 17th of March 1857, Mr. Offerman brought suit against the surviving executor for the amount due him out of the award. On the 10th December 1857, he brought another suit on the same claim. In 1863 he presented this claim before the auditor of the accounts of the surviving executor, filed in Berks county. The proceedings in Berks county were terminated by the compromise of 1867, hereinbefore mentioned. The suit of December 1857 terminated by a nonsuit on 12th April 1860. The suit of March 1857, in the District Court of Philadelphia county, was still pending until discontinued by Mr. Seitzinger, as attorney for plaintiff, on July 8th 1868. This discontinuance was undoubtedly entered under the agreement of compromise of 1867, and as that agreement has been decided to be invalid, whatever was done under it must fall with it. That suit in the District Court must therefore be considered here as still subsisting, and its discontinuance can have no effect adversely to the plaintiff's claim. But the prosecution of the suit having been stopped by the compromise, the plaintiff was obliged to come into a court of equity to have that avoided and to be reinstated in his rights as they existed previously thereto. It appears to me that he is not chargeable with laches in the prosecution of this claim, and that having had his suit at law, which was clearly commenced in time, stopped by a discontinuance based on an invalid agreement, he is not to be turned out of this court, to which he was compelled to resort, by a plea that the Statute of Limitations has been running against him all the time that he was endeavoring to prosecute his claim, and has let down its bar against him by reason of an act done without his consent and against his protest that he would not be bound by it.

"I therefore report that the plaintiff is not, so far as the claim now under consideration is concerned, debarred from prosecuting it by reason of the time elapsed since his right accrued. And my conclusion on the whole case is, that the third prayer of the plaintiff's bill should be refused, that the first and second prayers should be granted, and that under the fourth prayer the defendants should account to the plaintiff as above stated."

The complainant excepted to this report, because the master recommended the refusal of his third prayer, and the respondents, because he recommended that the first and second prayers of the

bill should be granted.    The Court of Common Pleas, No. 2, dismissed the complainant's exceptions, and sustained those of respondents, and dismissed the bill, which action, inter alia, was assigned for error by John M. Bickel and E. W. Offerman, who it appeared, had become vested with complainant's rights, were placed upon the record by the proper amendments to the bill, and who took this appeal.

*Henry C. Titus*, for appellants.—In the agreement of reference in 1867, Offerman contracted for the liability of both Rathbun and his wife.  Without the wife's liability it might well be that he would not be able to secure the fruits of the contract, and he could not be asked to accept the liability of the husband alone.    The authorities are clear to the point that all must be bound or all are free :  Flight *v.* Bolland, 4 Russ. Chan. 298 ; Pugh *v.* Good, 3 W. & S. 62 ; Bodine *v.* Glading, 9 Harris 53 ; Roseburgh *v.* Sterling, 3 Casey 292 ; Lawrenson *v.* Butler, Chitty's Contracts, 11th Am. ed. 1874, pp. 20, 21, and cases cited ; Lawrenson *v.* Butler, 1 Sch. & Lef. 13.

If the agreement is void, the discontinuance of the litigation on the claim in pursuance of said agreement is also nugatory, and in contemplation of law that litigation was pending when the bill was filed, March 9th 1869.    That action is still subsisting and is not barred by the Statute of Limitations.  If one purchases land under an agreement that another shall be equally concerned, he will be considered in equity as holding for himself and that other :  Stewart *v.* Brown, 2 S. & R. 461 ; Morey *v.* Herrick, 6 Harris 128.    The agreement of 1845, followed by the purchase of the lands, created a trust, and the burthen is upon the trustee to show its cessation by the execution of its terms or otherwise.  If the agreement raised a trust, Offerman cannot be affected by the lapse of time :  Price's Appeal, 4 P. F. Smith 472 ; Church *v.* Ruland, 14 Id. 432 ; Hill on Trusts 406 ; Snow *v.* Booth, 8 DeGex., M. & G. 69 ; Cox *v.* Dolman, 2 Id. 592.

*R. C. McMurtrie*, for appellees.—The executor had nothing to do with the contract under which Offerman withdrew his suits.    He was no party to it.  If the contract was a nullity Mr. Offerman knew this when he accepted it.  If he chose to accept from a third person a worthless security, knowing it to be so, as the price for discontinuing a suit against an executor, and he does discontinue, does his right to sue continue ?  No trick or anything short of a recognition of a debt will preclude a man from setting up the statute to a legal claim.    Fraud even, or concealment of liability, is no answer at law.    And the liability here is legal merely.

The contract was not a nullity ; it certainly bound the husband : Robinson *v.* Wallace, 3 Wright 129.    Has the plaintiff shown any right to an account for the proceeds of the real estate ?

[Bickel's Appeal.]

The argument confounds two distinct things. A contract to buy for joint account, like all other contracts, is perfectly valid, but it creates no other relation than any other contract. It creates a right which may be enforced; but it does not make a man a trustee. The argument is really that such a contract creates a right which will not be barred by the statute. Whereas, it creates a new legal obligation to do an act. The plaintiff admits he surrendered and cancelled his alleged contract, the basis of his claim in 1867, and he received a contract of a third person as the price or consideration.

The case is then this : The alleged contract was made in 1845. The purchase was in 1846. The conveyance in 1856. Performance was first demanded by Offerman in 1869, while as early as 1846 the conduct of the parties showed, 1. He did not pretend to have a title. 2. Packer asserted exclusive title. And there is another fact indisputable, which demonstrates that he pretended to no title because of the use of the award in paying for the land. On the contrary, instead of asserting that this was used to carry out the contract of purchase for joint account, he sued to recover the money from Packer, on the ground that by thus using the award Packer had received the money for the use of Offerman.

Mr. Justice GORDON delivered the opinion of the court, March 25th 1878.

A resulting trust in land can be raised only from fraud in obtaining title thereto, or from the payment of purchase-money when that title is acquired: Barnet v. Dougherty, 8 Casey 371. Offerman has failed to bring his case within the reach of either of these rules. That R. W. Packer used any trick, concealment or underhand means in procuring the contract from the Camden and Amboy Railroad Company, is, so far as we can discover, not even alleged, and that Offerman paid the purchase-money, or any part thereof, which procured or helped to procure that contract, is not proved. It is urged that the alleged trust had its origin in the agreement between Offerman and Packer, dated June 17th 1845. That, however, was not a definite contract to purchase, but only an agreement to endeavor so to do, and this seems to have been based upon the further condition that they could find some one or more persons who would help them to make the first payment of purchase-money. There is, however, no evidence that any such person or persons were ever found, or that there was any further attempt to carry this contract into execution; neither was there the payment of a dollar of money upon it, nor even a covenant therein for the payment of money. Had it been intended to apply the proceeds of the award against the Camden and Amboy Railroad Company and Delaware and Raritan Canal Company, or any part thereof, to this contemplated purchase, such intent would surely

have appeared, for that award is mentioned in the agreement, but only to state that Offerman had assigned one-fourth part thereof to Packer, "for considerations Packer signed to said Offerman some time hence." The presumption, then, of any such application being thus rebutted, it does not matter that some nine years after this time and after Packer's death, when the legal title came to be conveyed to the devisee, this award was applied as a credit on the purchase-money still due the company, for not only was this long after the acquisition of the equitable title by Packer, but it was not so applied with Offerman's assent, or as his property, but as the property of the estate. Moreover, this claim on part of the plaintiff is obviously an after-thought. Packer bought and entered into the actual and exclusive possession of the land in 1846, and was recognised by Offerman, in the most unequivocal manner, as the owner thereof. He made no claim to any interest therein during Packer's life, nor until some one or two years after the legal estate had passed by deed to Mrs. Rathbun. Clearly no trust of any kind can be raised on such a state of facts, and we need pursue this branch of the case no farther.

The question next to be considered arises on the Statute of Limitations, as affecting the plaintiff's claim against the estate for the amount of the proceeds of the award above stated. This award, amounting to the sum of $13,085.20, was rendered February 11th 1841; it was assigned to Packer February 18th 1842, he at the same time agreeing to collect the same, and after deducting his own debt, pay over the balance to Offerman. As we have seen, this award was settled with the Camden and Amboy Railroad Company by Packer's executor in 1856; we may therefore set it down as a fact, as the auditor has done, that from this last-recited date the statute commenced to run, and unless tolled by suit, or some other act of the parties, it would operate as a bar some time in 1862. On the 17th of March 1857, Offerman brought suit on this claim against Packer's executor, in which a discontinuance was entered July 8th 1868. On the 10th day of December 1857, a second suit was brought in the District Court of Philadelphia county, against the same party and for the same claim, on which a nonsuit was suffered April 12th 1860. Last of all, this bill was preferred some time in 1869. In all this there is nothing to release the grasp of the statute; this, however, is accomplished by the learned auditor, in the manner following. Certain suits had been brought, in the Common Pleas of Berks county, to August Term 1865, by Offerman, against Rathbun and wife. By an agreement, dated January 30th 1867, it was agreed that Offerman should surrender, for cancellation, the paper of June 17th 1845, and release all claims and demands whatsoever against the defendants and the estate of R. W. Packer, saving and excepting only that arising from the contract respecting the award against the railroad and canal companies,

[Bickel's Appeal.]

and it was further stipulated that the amount due the plaintiff on this claim should be settled and adjusted by an arbiter in the agreement named and appointed. It was also provided in the instrument just mentioned, that the Berks county suits should be marked settled, and the case pending in the District Court, of March Term 1857, against Asa Packer, as executor of R. W. Packer's estate, should be discontinued. On the 3d of the following April, Offerman, having become dissatisfied with the agreement of the 30th of January 1867, gave formal notice of his repudiation thereof, and of his revocation of the submission. Now, the master having found that the agreement above mentioned was void, because not properly executed by Mrs. Rathbun, a feme covert, came to the conclusion, that, as the suit of March 1857 was, as he says, undoubtedly discontinued by Mr. Seitzinger, the plaintiff's attorney, under and in pursuance of the agreement, the revocation restored the parties to their original status, rendered the discontinuance inoperative, and reinstated the suit of March 1857, and by this means Offerman's claim was kept alive and the statute tolled. Admitting the facts to be as assumed, we nevertheless cannot admit the legal conclusion drawn from them. As we have seen, the suit of March 1857 was against Asa Packer as surviving executor; the present action is brought against this same person, E. P. Wilbur, administrator of Rollin N. Rathbun and Helena Rathbun, and the decree reported by the master is against Packer and Helena Rathbun. But by what process of reasoning is the action of March 1857 made to toll the statute as to Mrs. Rathbun? It is urged, however, that, though as to her the statute may be operative, it may nevertheless be tolled as to the executor, by virtue of that suit; in other words, as to him, this bill may be made to stand on the foot of the action of 1857. Let us examine this proposition. We observe, in the first place, that without some extrinsic support this bill must fall, for, according to Hamilton v. Hamilton's Ex'rs, 6 Harris 20, the Statute of Limitations is applied with the same effect in a court of equity as in a court of law. Such being the case, though a bill may have a much wider scope, as to parties and the subjects embraced by it, than a suit at law, yet it has no greater force as to the statute. A court of equity having obtained jurisdiction over the parties, may settle every subject in dispute between them, touching the controversy, near or remote, direct or collateral, but cannot directly or indirectly reach beyond the statute. But an account is brought into this bill, which, counting from the date thereof, is barred by the statute. How can this apparently insuperable difficulty be overcome? The answer is, by the action of 1857; as that suit was begun within the six years, it is said, it prevents the running of the statute. No doubt this is correct so far as the claim is involved in and pursued through that suit, but it cannot impart its vigor to any other suit. This is expressly

ruled in Magaw *v*. Clark, 6 Watts 328. In this case the original suit was against Clark & Shryock, in the year 1825, and service of summons was had on Shryock only. In 1830 an alias was issued and served on both, and the *narr*. and other pleadings were filed as of the suit on this second writ. On demurrer, held, that the Statute of Limitations was a bar· as to both· defendants, notwithstanding the former suit. The decision is put upon the ground that the alias writ having been issued against both Shryock & Clark, and having been served on both, it was in fact a new suit, and not the continuance of the former one, hence was not effective to keep the former alive. It will be observed that thus it was that the alias failed even as to Shryock, who had been served with the original. So also it was said in the case of Wann *v*. Pattengale, 2 Harris 213, that whatever difficulty might intervene in carrying forward the original suit, the institution of a new and distinct action could not be so connected with the old as, by the use of both, to count back within the period of limitation. This, however, is exactly what is attempted in the present case, under the name of equity ; the effort is to engraft this bill upon the action of 1857, so as to give it a power which otherwise it would not have. It matters not that the suit was in full life when the bill was filed, for, in Magaw *v*. Clark, the alias was of course issued pending the former action ; but this bill is certainly quite as much a new suit as was the second summons in that case. Nor can we see where the peculiar equity powers are, which enable a bill to overstride a clear rule of law and attach itself to an action with which it is in nowise connected, except through the claim involved in it. Surely, equity cannot thus overreach the statute, when, as to the statute, a bill is governed by the same rules as a suit at law. Yet it is gravely argued we may begin to count back, in order to reach the statutory period, not from the date of the bill, but from the date of a suit commenced some nine years before. Conceding that if the claim were of such a character that the statute would not operate upon it, it might be settled in this suit, yet if it were so settled it would be wholly independent of the action in the District Court. It would be the claim itself and not the suit that equity would consider ; so far as that suit was concerned, it would be treated as though it did not exist. For what other purpose, then, is that case now brought into this action than to tide this bill over the bar, of the statute ? Taking up the claim and counting from the date of the bill, and it is found the statute has run ; the plaintiff's case is at an end ; but the master, in his desire to do what he considers justice, goes back some nine years and discovers a suit at law involving this claim, and he concludes that, as equity has large powers and powers that may be extended to the last degree, he will graft his bill upon that suit and thus forestall the statute. This cannot be ; it is equity run mad.

[Bickel's Appeal.]

In this we concede, as of course, what no one doubts, that had the plaintiffs, by the machination or fraud of Packer's representatives, been induced to defer their claim beyond the statutory period, equity would interfere to prevent the intervention of the statute, but as there is neither proof nor allegation of any such fraud, there is no room for equitable interference on that ground.

So, in like manner, whilst we are not prepared to endorse the finding of the learned master that the non pros. of 1868 was entered, by the attorney of Bickel and Offerman, in fraud of their rights, yet, conceding the accuracy of that finding, it was, nevertheless, a fraud in which the defendants were no way involved ; it was a fraud committed by the plaintiffs' own agent, and one which, by no possibility, can be set up against the defendants.

Treating the non pros., however, as of no effect, and this is all the plaintiffs can ask, it but follows that a recovery may be had upon any claim set forth in the action of 1857, not older than six years, counting from the teste of the writ. That this count can be made backward from 1857, is due to the fact that that action had its origin in that year, but as it cannot communicate this date to any subsequent suit, either at law or in equity so neither can it communicate a power which it possesses only by virtue of that date.

Decree affirmed.     Costs to be paid by appellants.

Chief Justice AGNEW filed a dissenting opinion.