## Livingston v. American Telephone & Telegraph Co.

*John G. Williams*, for plaintiff.

*W. Russell Hoerner* and *Paul H. Rhoads* of *Rhoads, Sinon & Reader*, for defendant.

KREIDER, J., June 30, 1964.—We have before us the preliminary objections of defendant, American Telephone and Telegraph Company (A. T. and T.) to a complaint in equity filed by Hazel W. Livingston, administratrix of the estate of her husband, Stahley Livingston. These objections are in the nature of a demurrer which claims (1) The facts alleged in the complaint do not set forth an enforceable duty owed to the plaintiff by A. T. and T. or the breach of any duty by A. T. and T.; (2) the complaint fails to set forth a cause of action against A. T. and T. Defendant also interposes an objection of laches asserting that "delay from October 9, 1951 to April 10, 1963, in instituting a suit, concerning share certificate T164205 and alleged claims and demands related thereto, amounts to laches." Defendant contends that plaintiff as administratrix of her husband's estate cannot assert a claim which he, if living, could not assert.

*Essential Facts Averred in the Complaint*

Plaintiff's complaint filed April 18, 1963, avers, inter alia, that on or about February 1, 1950, defendant A. T. and T. issued seven shares of its common stock to William J. Kirby, evidenced by stock certificate no. T164205; that on October 9, 1951, William J. Kirby

sold and delivered the certificate, together with a separate assignment form which was endorsed in blank, to Stahley Livingston, the now deceased husband of plaintiff; that Livingston pledged the stock certificate as collateral for a personal loan with Community Consumer Discount Company of Harrisburg, Pennsylvania, a pledge which he subsequently renewed in consideration of additional loans to him; that when William J. Kirby died in May 1958, his brother and executor, Paul J. Kirby, mistakenly informed defendant that certificate no. T164205 was lost or destroyed and, upon furnishing defendant with an indemnity bond, was issued a replacement certificate.

The complaint also alleges that on or about April 24, 1959, defendant by virtue of a recapitalization made a stock split in which each shareholder received 3 shares of A. T. and T. stock for each share of stock then held and surrendered; that on April 24, 1959, pursuant to said stock split, 21 shares of defendant's stock were issued in mistake to Paul J. Kirby upon the surrender of the replacement certificate for certificate no. T164205.

The complaint further avers that Stahley Livingston died on September 24, 1961; neither he during his lifetime, nor his administratrix, Hazel W. Livingston, received any of the dividends payable on said shares of stock; on or about March 27, 1962, approximately six months after the death of Stahley Livingston, the Community Consumer Discount Company made demand on Hazel W. Livingston to satisfy her husband's indebtedness to said loan company, then in the amount of $530 and to take back said certificate no. T164205; about October 12, 1962, plaintiff requested defendant to issue 21 shares of its stock to her or pay her $3,073.88, being the then value of the stock, plus accrued dividends from October 9, 1951 to September 6, 1962. Defendant refused plaintiff's demand.

The complaint prays (a) that defendant be ordered to issue a certificate for 21 shares of its common stock to plaintiff; (b) defendant be ordered to pay to plaintiff the dividends on the stock from October 9, 1951, to the present time in the amount of $724.50, together with interest; (c) for such other equitable relief as the court may deem necessary and proper.

## Discussion

As above stated, defendant's preliminary objections to the complaint are in two categories: (1) Defendant A. T. and T. has no duty to register the alleged transfer of its shares because the documents submitted to it by plaintiff in support of her request do not comply with the law, and (2) plaintiff's claim is barred by laches.

Defendant company agrees that if the original certificate holder, William J. Kirby, had signed and delivered the stock certificate in blank, the holder thereof could have acquired a prima facie title thereto. Defendant strenuously contends, however, that the *separate form*[1] of assignment is fatally incomplete and therefore it has no duty to register the stock certificate to which the assignment form was allegedly stapled.

Defendant relies heavily on In re Davis Estate, 95 Ohio App. 452, 120 N.E. 2d 907 (1953). There the representatives of a surviving wife claimed title to a

---

[1] ASSIGNMENT SEPARATE FROM CERTIFICATE—1010
FOR VALUE RECEIVED, ——————————— hereby sell, assign and transfer unto ——————————— ( ) Shares of the ——————————— Capital Stock of the ——————————— standing in ——————————— name on the books of said ——— ——————————— represented by Certificate No. ——————————— herewith and do hereby irrevocably constitute and appoint ——— ——————————— attorney to transfer the said stock on the books of· the within named ——————————— with full power of substitution in the premises.
Dated ———————————
In the presence of WILLIAM J. KIRBY
STAHLEY LIVINGSTON

stock certificate and shares represented thereby. The relevant facts were described by the Court of Appeals of Ohio as follows: (95 Ohio App. p. 454, 120 N.E. 2d p. 908)

"The executor of the estate of the wife claims title to the certificates of stock by reason of a separate blank assignment stapled to the certificates, which were found after her death in a safe-deposit box of the Oak Hills Savings Bank. The deposit box, at the time of the wife's death, stood in her name alone. The assignments of all the certificates are in blank, except for the signatures of the husband and one Bruney, a witness thereto. The assignments do not contain the names of the corporations issuing the stock; there is no number of the certificates, no number of shares, no name of the transferee and no date when the assignments were signed by the husband. A blank form of assignment was used with none of the blank spaces filled in."

After reviewing the pertinent provisions of the Ohio law, the court held that title to the certificates and the shares represented thereby had not passed: (p. 455 and p. 909)

"Two essential requirements of this statute are, first, that there must be a delivery of the certificate and, second, that there must be a *separate document describing the certificate so that it may be identified*, neither of which has been established in this case. A different rule applies where the assignment is written on the certificate." [2]

A similar conclusion was reached in Edgerly v. First National Bank of Boston, 292 Mass. 181, 197 N.E. 518, (1935). There the court stated: (292 Mass. p. 185, 197 N.E. p. 520)

"Nevertheles, if we confine our attention to the delivery of the stock certificate to the defendant bank, accompanied by the 'separate document' signed by the

---

[2] Emphasis throughout ours unless otherwise noted.

plaintiff, purporting to assign unnamed stock to an unnamed person, and ignore the 'permission to pledge', no valid transfer to the defendant bank is shown. Section 27 of the uniform stock transfer act purports to state the 'only' methods by which legal title may be transferred. [Citing cases.] Where, as in this case, the signature of the owner is on a 'separate document', that document must purport to assign, or authorize the transfer of, the 'certificate' or 'the shares represented thereby'. . . . . "

In the instant case, the blank form of assignment which is attached as exhibit C to plaintiff's complaint is practically identical with the one in the Davis case. All spaces are blank on exhibit C except for the signatures of William J. Kirby and plaintiff's husband, Stahley Livingston, the latter's signature appearing solely *as a witness.*

We believe the conclusions reached in the Davis and Edgerly cases are sound. However, for reasons hereinafter set forth, we do not deem it necessary to decide at this time whether the alleged invalidity of the blank assignment form, exhibit C, requires dismissal of plaintiff's complaint without a hearing. We think the controlling question before us is whether plaintiff's husband, Stahley Livingston, was guilty of laches. Defendant avers that there has been prejudicial delay in instituting the present cause of action and it points out that although the alleged sale is supposed to have taken place on October 9, 1951, defendant company paid dividends to William J. Kirby, the record owner of certificate no. T164205, from October 9, 1951, until his death six years and five months later in May 1958, and that thereafter dividends were paid to the record owner of certificates derived from the stock split.

Defendant further argues in its brief that Stahley Livingston sat idly by for almost 10 years and made no claim for dividends; that he sat idly by in 1958 while

the estate of William J. Kirby was being administered in Dauphin County, Pa.; that he sat idly by in 1959 while defendant, A. T. and T. distributed shares of capital stock resulting from a widely-publicized stock split and that such conduct by Livingston is not consistent with the claim of title to certificate no. T164205 now asserted for the first time after his death.

Plaintiff avers in her brief that while the defense of laches is properly made a preliminary objection in an action in equity, Pa. R. C. P. 1509(b), it is to be sustained only where its existence is clearly apparent from the face of the complaint, citing Rush v. Butler Fair and Agricultural Assn., 391 Pa. 181 (1958). There the court stated, page 186:

"It is true that a chancellor has the duty to dismiss a complaint on preliminary objections if laches clearly apear from the averments thereof, West v. Young, 332 Pa. 248, 2 A. 2d 745 (1938), but it is only in cases which are clear and free from doubt this duty arises, Gardner v. Allegheny County, 382 Pa. 88, 94, 114 A. 2d 491 (1955). While the needless consumption of time and incurring of expense involved in the trying of cases which are certain to fail should be avoided, usually the question of laches can be determined only after the Court has had an opportunity to appraise the evidence and so determine whether a valid reason exists for the delay in bringing suit. . . ."

Plaintiff contends that the averments in the instant complaint are not so clear as to require dismissal on the basis of laches; that the complaint does not disclose delay in giving notice to defendant to transfer the certificate on its books and that defendant will suffer no prejudice by being required to register said certificate no. T164205 on its books; that the court should consider the existence of the indemnity bond filed by the executor, Paul J. Kirby, when he secured the replacement certificate from defendant, and that the bond was

designed for the purpose of preventing any loss or prejudice to defendant in a situation such as is now before the court.

We have considered the decisions cited by both parties on the question of laches. Each case necessarily must stand on its own facts: Thompson v. Curwensville Water Co., 400 Pa. 380 (1960). The rules governing laches have been stated many times by the appellate courts of Pennsylvania. A comprehensive discussion is found in Silver v. Korr, 392 Pa. 26 (1958). There Mr. Justice, now Chief Justice, Bell, speaking for our Supreme Court, said, pages 29-30:

"In First National Bank v. Lytle Coal Co., 332 Pa. 394, 396, 3 A. 2d 350, the Court said: ' "Equity will not lend its aid to one who has slept upon his rights until the original transaction is obscured by *lapse of years* and *death* of parties: Kinter v. Commonwealth Trust Co., 274 Pa. 436, and where a party having the right to set aside a transaction stands by and sees another dealing with the property in a manner inconsistent with his alleged claim and makes no objection, a delay of six years will bar a suit in equity: Brown v. Kemmer, 214 Pa. 521. . . . ." '

"In the absence of fraud or concealment, it is a *general rule* that laches follows the statute of limitations and will bar all transactions that occurred *beyond the six year limitation* of the statute: Hornsby v. Lohmeyer, 364 Pa. 271, 279, 72 A. 2d 294; Ebert v. Plymouth Oil Co., 348 Pa. 129, 34 A. 2d 493.

"In Grote Trust, 390 Pa. 261, 135 A. 2d 383, we dismissed a claim because of laches arising from long lapse of time, *deaths* and attendant circumstances. The Court said (pages 269-270) : 'Laches arises when a defendant's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him. . . .''

Kinter v. Commonwealth Trust Co., supra, 274 Pa. 436 (1922), was a celebrated equity case arising in Dauphin County in which laches was the pivotal question involved. There plaintiff's bill in equity disclosed delay in filing for *nearly six years during which one of the principal defendants,* Hildrup, *had died.* Plaintiff, J. Carroll Kinter, subsequently brought an action in equity to set aside the sale of his corporate stock to defendants on the ground of fraud. Plaintiff had been a stockholder for some years in the Harrisburg Pipe and Pipe Bending Company, a manufacturing corporation located at Harrisburg, Pa. He averred that he had been deceived by D. E. Tracy, president, by William T. Hildrup, Jr., secretary, treasurer and general manager, and by William P. Starkey who was superintendent of the company. The bill averred that these defendants were also directors and large stockholders of the company and that in 1915 the company's agent in London had secured a large war munitions contract and that the said three corporate officers conspired to keep from the other stockholders knowledge of this important business while they secured options on as much as possible of the outstanding common stock, including that of plaintiff Kinter. President Judge Hargest, who wrote the opinion for the Dauphin County court dismissing the bill, 25 Dauph. 26 (1922), observed, page 47:

". . . . It was a matter of common knowledge that this great industrial concern (perhaps the largest manufacturing enterprise within the territorial limits of the city of Harrisburg), from the date when the contracts were first secured, during the whole period of the war was operated to the utmost of its capacity and was furnishing work at abnormal wages for men and boys of the community who left other places of employment to take advantage of the work and wages there. The

newspapers commented upon it, and the community talked about it.

"The matters to which we have referred may not all be matters of which the Court may take judicial notice, and we do not predicate our conclusions on them, but the Court can hardly shut its eyes to what was commonly known in the community. Can the plaintiff be heard to say that he did not know what everyone else knew?"

Judge Hargest further stated at page 51:

". . . . The conclusion is irresistible that the plaintiff must have known, or could have known, of the prosperity of the company. . . . .

*"The death of Hildrup materially changed the conditions so far as Tracy and Starkey are concerned.* The dealings between the plaintiff and the defendants were all through Hildrup. He would necessarily be a most important witness. His mouth is sealed by death. He is not here either to defend himself, or the others, against the charge of fraud. His evidence is denied to the defendants because of the delay of the plaintiff in bringing his bill. The condition of the defendants has become so changed that it cannot be restored and it is extremely doubtful whether they could produce evidence necessary to a fair presentation of the case on their part."

Although plaintiff's complaint in the instant case does not set forth the occupation of her husband, and we do not predicate our conclusions thereon, we think it was common knowledge, as defendant asserts in its brief, that Stahley Livingston during the period in question was the manager of a stock brokerage office in the city of Harrisburg, Pa. If the separate assignment form which was allegedly found attached to the stock certificate in question was actually intended to represent a sale, as the complaint avers, by William J. Kirby to Stahley Livingston, we are unable to compre-

hend why Livingston would have permitted the dividends to be paid to Kirby for six years and seven months from October 9, 1951, until Kirby's death in May 1958, *and thereafter for more than three years until the death of Livingston* on September 24, 1961; nor can we understand why Livingston would have permitted the additional shares resulting from the stock split of A. T. and T. in April 1959 to be delivered to the registered holder of record instead of to himself.

In view of the death of William J. Kirby, his evidence is denied to defendant because no suit was ever brought against him by Livingston during the lifetime of either of them. Under all the circumstances, we think it would be an injustice to permit the assertion of plaintiff's claim which in any event, in the absence of fraud or concealment, is barred by the equitable doctrine of laches: Silver v. Korr, supra, 392 Pa. 26, 30.

Wherefore, we are constrained to enter the following

### Decree

And now, June 30, 1964, defendant's preliminary objection raising the issue of laches is sustained and the plaintiff's complaint is dismissed.

Judge Sohn did not participate in the consideration or decision of this case.