Hornsby et al., Appellants, *v.* Lohmeyer et al., Appellants.

Argued January 17, 1950.    Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

reargument refused March 30, 1950.

.*Frederic L. Clark*, with him *Everett H. Brown, Jr., James F. McMullan* and *Clark, Brown, McCown, Fortenbaugh & Young*, for defendants.

*D. Arthur Magaziner*, with him *Mayer, Magaziner & Brunswick*, for Thomas M. Browning, defendant.

*Roland J. Christy*, for plaintiff.

OPINION BY MR. JUSTICE HORACE STERN, March 20, 1950:

Plaintiffs are minority stockholders in the Thurman Manufacturing Company, a Pennsylvania corporation. They brought a bill in equity against the officers and directors, naming the corporation also as a party defendant. The bill alleged fraudulent withdrawals of corporate property for which plaintiffs demanded an accounting and restitution; it complained also of allegedly improper sales and transfers of stock. Defendants filed preliminary objections all of which were sus-

tained by the court below with leave to plaintiffs to file an amended bill. Plaintiffs thereupon filed such a bill and again defendants filed preliminary objections; this time the court sustained some of these and dismissed others. Plaintiffs have taken an appeal (No. 114) on the ground that the court improperly limited the period for which defendants should account. Defendants have likewise taken an appeal (No. 101) on the ground that they are not liable to account at all.

Except by statute no appeal lies from an order or decree to account. The Act of June 24, 1895, P. L. 243, as amended by the Act of March 30, 1921, P. L. 60, allows an appeal to the defendant in all cases where the plaintiff prays for an account and the defendant denies his liability to account and the decree of the court, upon this preliminary question of liability, is in favor of the plaintiff. It is not the province of the appellate court under this Act to determine preliminarily what period the account should cover; any objections on that score must await an appeal from the final decree: *Beatty v. Safe Deposit and Title Guaranty Co.*, 226 Pa. 430, 432, 75 A. 592, 593; *Rowley v. Rowley*, 289 Pa. 171, 174, 137 A. 226, 228. This statutory right of appeal is confined to the defendant; there is no provision for appeal by a plaintiff: *Lauer v. Lauer Brewing Co., Ltd.*, 180 Pa. 593, 597, 37 A. 87, 89; *Rowley v. Rowley*, 289 Pa. 171, 174, 137 A. 226, 227. As far as a plaintiff's *non*-statutory right of appeal from the sustaining of preliminary objections is concerned, it would lie only if he were denied an accounting and his bill were dismissed, which is not the case here. Plaintiffs' appeal in the present case must therefore be quashed. It may be added, however, that, in the light of what is hereinafter shown to be the fatal inadequacy of their bill, the question raised by plaintiffs' appeal as to the proper period of accounting, is, in any event, wholly academic.

One of defendants' preliminary objections was to the multifariousness of plaintiffs' bill in that it sets forth two distinct causes of action, one, a stockholders' derivative suit seeking restitution of corporate property which the corporation itself had refused to reclaim, the other an action seeking relief for the individual plaintiffs from alleged improper sales and transfers of stock. Joining these two unconnected causes of action in one bill undoubtedly made it vulnerable to defendants' attack on the ground stated: *Kelly v. Thomas*, 234 Pa. 419, 431, 432, 83 A. 307, 311; *Whitney v. Whitney*, 296 Mass. 13, 4 N. E. 2d 438; *James v. P. B. Steifer Mining Co.*, 35 Cal. App. 778, 171 P. 117. However, we shall disregard this formal defect and pass to a consideration of the merits.

The bill alleges that Lloyd O. Lohmeyer, President of the corporation, has been receiving 15%, and William E. Grafe, Secretary and General Manager, 10%, of the net profits of the business, as well as bonuses, the amounts of which are not stated in the bill;* that these allowances were in addition to the regular salaries of those officers, the amounts of which salaries, however, are not set forth; that Lohmeyer has also received certain commissions, amounting to approximately $3000 a year over a period of three years, in connection with sales to customers whom he personally handled. A later paragraph of the bill alleges that Lohmeyer and Grafe unauthorizedly and improperly withdrew and distributed profits of the company to themselves totalling approximately $37,000 and $28,000 respectively in the years from 1927 to 1947 inclusive; these sums, however, apparently represent the percentages of the net profits

---

* Counsel for plaintiffs states in his brief that the bonuses over a period of 20 years from 1927 to 1947 amounted, in the case of each of these officers, to a total of $28,500.

already referred to. The bill itself discloses that all these payments were authorized by the Board of Directors,—the percentages of the net profits by a resolution in 1919, the bonuses by resolutions in 1920 and 1929, and the commissions by a resolution in 1946; moreover they have all been approved, ratified and confirmed at a meeting of the shareholders. It is true, of course, that majority stockholders occupy a quasi-fiduciary relation toward the minority which prevents them from using their power in such a way as to exclude the minority from their proper share of the benefits accruing from the enterprise: *Weisbecker v. Hosiery Patents, Inc.*, 356 Pa. 244, 250, 51 A. 2d 811, 813, 814. It is also true that directors may not vote to themselves or to the officers of the corporation compensation which is excessive, unreasonable and out of proportion to the value of the services rendered, and, if any such payments are made, the court, upon protest of a minority shareholder, may examine into their propriety and reduce them if found to be exorbitant. These principles, however, have no application to the present case for the reason that the bill not only fails to allege that the compensation paid to any of the directors or officers was in fact excessive or unreasonable, but it also fails to set forth any facts from which such an inference could be drawn; it does not state what the salaries were nor the amount of the sales and profits nor even the nature of the business conducted by the corporation. Certainly the payment of bonuses to the officers of a corporation is not in itself irregular or illegal; on the contrary it is quite usual in the case of profitable business operations the success of which is attributable at least in part to the industry and ability of the management, and a court is not ordinarily warranted in substituting its own judgment as to the proper compensation of the officers for that of the directors whom the stockholders have chosen to manage the af-

fairs of the corporation. Nor, in the absence of averments of facts indicating that such compensation is improper, does plaintiffs' bill gain additional weight by its occasional employment of the adjective "fraudulent". In *Bailey v. Bailey*, 338 Pa. 221, 222, 12 A. 2d 577, 578, it was said that "Because of the alluring generality of the term 'fraud' there is a temptation to employ it indiscriminately, whereby it tends to degenerate into merely a trite epithet." Merely alleging fraud as a legal conclusion adds nothing if it is not based upon facts clearly and explicitly set forth as constituting such fraud: *Kepler v. Kepler*, 330 Pa. 441, 445, 199 A. 198, 202; *Compton, Receiver, v. Heilman*, 331 Pa. 545, 550, 1 A. 2d 682, 684; *Shinn v. Stemler*, 163 Pa. Superior Ct. 363, 365, 61 A. 2d 777, 778.

The bill alleges that Lohmeyer and Grafe distributed profits of the company to Robert B. Levison, who is Assistant to the Secretary, totalling $9,600 in the years from 1941 to 1947, and certain smaller sums to other employes who are not parties to the bill; also that they paid to the Assistant to the Treasurer, Lloyd O. Lohmeyer, Jr., (who is not a party to the bill) sums totalling approximately $14,000 over a period of 2½ years for commissions on sales, a Christmas bonus, and a certain percentage of the company's profits. Not only is it not alleged that these distributions and payments were excessive compensation for the services rendered but no facts are stated that could lead to such an inference. It may be added that all these payments have been approved, ratified and confirmed at a meeting of the shareholders.

Joined to the charges in the bill of improper withdrawals of corporate property there are, as already stated, complaints in regard to certain transfers of stock said to have been made in violation of a by-law of the corporation adopted in 1927 which provided that any

stockholder wishing to sell or transfer his stock must first give thirty days' notice to the other stockholders of his intention so to do with an option to them to purchase the stock in proportion to their respective holdings; if the seller and the remaining stockholders are unable to agree on a price the sale must be made at public auction. Specific objection is made to transfers of 20 shares in 1936 by Arthur Lohmeyer to Lloyd O. Lohmeyer, 37 shares in 1946 by Josephine E. Fling to Lloyd O. Lohmeyer, 10 shares in 1940 by Lloyd O. Lohmeyer to Ruth C. Lohmeyer and 13 to Ruth W. Lohmeyer, and 10 shares in 1941 by Lloyd O. Lohmeyer to Ruth C. Lohmeyer. There are several reasons why plaintiffs' objections to these transfers cannot be sustained. One is that Arthur Lohmeyer, Josephine E. Fling and Ruth C. Lohmeyer are not parties to the bill. Another is that there is no averment that if these shares had been offered to them plaintiffs would have desired to exercise their option to negotiate for their purchase. A third reason is that a by-law is a contract among the shareholders (*Elliott v. Lindquist,* 356 Pa. 385, 388, 52 A. 2d 180, 182) and therefore, upon well-established authority, the six year limitation of the statute would be applicable in equity and would bar all these transactions that occurred beyond that period: *Ebbert v. Plymouth Oil Co.,* 348 Pa. 129, 34 A. 2d 493; *Madera v. Monongahela Rwy. Co.,* 356 Pa. 460, 464, 465, 52 A. 2d 329, 332. There is nothing to indicate that there was any affirmative, independent act of concealment on the part of defendants which would have prevented plaintiffs from examining the stock transfer books since the year 1930 from which time plaintiffs have been stockholders. Moreover, even apart from the statute of limitations, plaintiffs are clearly guilty of laches, which, appearing upon the face of the bill, can be taken advantage of by the filing of preliminary objections: *Leseman-*

*Frederick Co. v. Diebold,* 359 Pa. 89, 92, 58 A. 2d 140, 142. The nullification of these transfers after the long period of time that has elapsed since they were made, during which time the transferred stock has presumably received annual dividends and been voted at meetings, would necessarily result in injury to either the transferors or the transferees of the shares as the case may be.

The bill complains that certain shares, acquired as treasury shares, were transferred to individuals at inadequate prices. Four of the transactions specified occurred in 1941 and any present relief in regard thereto is barred by the statute of limitations. Two others were transfers to Lloyd O. Lohmeyer; these are shown in the exhibit attached to the bill to have been transfers from individual holders and not from the corporation. The remaining transaction was one in 1946 whereby 20 shares were transferred to Ruth W. Lohmeyer, but in that case there was a simultaneous double transfer from the holdings of one Ethel F. Whiting, through the corporation, to Ruth W. Lohmeyer, indicating that these shares were not actual treasury shares but were merely passed through the stock transfer books in the manner indicated.

Lohmeyer and Grafe are charged in the bill with having made improper investments of the company's funds resulting in losses totalling approximately $35,000. It appears that these investments date from the years 1928 to 1932,—16 to 20 years before the institution of the present suit. Apart from other considerations it is obvious that any right to object to them has long since been barred by the statute of limitations: *Ebbert v. Plymouth Oil Co.,* 348 Pa. 129, 34 A. 2d 493.

Plaintiffs challenge the right of counsel to represent both the corporation and the individual defendants. Although theoretically any recovery in a stockholder's derivative action redounds to the benefit of the company

the corporation may defend such a suit if the directors in good faith determine that it is to the best interests of the corporation so to do and to employ counsel for that purpose: *Blish v. Thompson Automatic Arms Corporation*, 64 A. 2d 581, 607 (Del.); cf. Act of April 18, 1945, P. L. 253, sec. 3.

Plaintiffs' appeal (No. 114) is quashed; defendants' appeal (No. 101) is sustained, and the bill is dismissed at plaintiffs' costs.