## Himes v. Centre Broadcasters, Inc.

*Litke, Gettig & Raycroft,* for plaintiff.

*Love & Wilkinson* and *Smith, Smith & Work,* for defendant.

CAMPBELL, P. J., January 15, 1963.—Plaintiff filed a complaint in equity to which preliminary objections were promptly filed. After argument and before an order of court disposing of the same, plaintiff sought and was granted extensive use of oral depositions of defendants and other corporate officers and inspection of all of the corporate books pursuant to Pa. R.C.P. 4007 and 4009. Counsel for plaintiff have orally assured the court that they had complete access to the

books and records and were not hindered or prevented from any inspection thereof nor in pursuing their rights by oral depositions. On August 20, 1962, plaintiff filed an amended complaint. To this amended complaint preliminary objections were again filed consisting of a motion for more specific pleading, a motion to strike and a demurrer. The merits of defendants' preliminary objections are now before the court for disposition.

The first eight paragraphs of plaintiff's complaint indicate that in the early part of January, 1944, plaintiff, H. Melvin Himes, and defendants, Richard J. Kennard, now deceased, and William K. Ulerich, formed a corporation known as Centre Broadcasters, Inc. Each of the three named individuals was issued 4,500 shares of common stock. On July 12, 1944, they each executed an article of agreement, being exhibit A attached to the complaint which we will hereafter refer to as the restrictive sale agreement. In brief, this agreement restricted the alienability of stock and provided a detailed procedure which was to be followed in the event anyone decided to sell his stock. By clear language, among other things, the agreement indicated that it was to be supplemented by a separate voting trust agreement. It would appear that this agreement as well as the subsequent voting trust agreement entered into by the parties was a device to afford additional protection to R. J. Kennard for his extending a line of credit to the new corporation, which involved unknown risks, in the amount of $10,000.

The voting trust agreement which was actually a separate agreement dated July 12, 1944, provided that each stockholder was to surrender his stock certificates to themselves as trustees and in return receive voting trust certificates which contained specific provisions against alienation. The trustees of this voting trust agreement were the identical individuals who owned the stock including plaintiff, to-wit: H. Melvin Himes,

and defendants, Richard J. Kennard, now deceased, and William K. Ulerich. The apparent purpose of this voting trust agreement was to assure the control of the corporation by binding the parties to vote as a unit, thus making Mr. Kennard's advancements more secure. We quote from paragraph 7 thereof:

"The action of a majority of the voting trustees expressed from time to time at a meeting or by a writing without a meeting, shall, except, as otherwise herein stated, constitute the action of the voting trustee and have the same effect as if assented to by all . . ."

The agreement pertains in its entirety to the relationship between the parties as stockholders and has nothing to do with the actions of directors except to the extent that the stockholders would elect the directors. The agreement specifically stated that "the trust hereby created shall continue for a term of ten years from the date hereof and shall then terminate . . ." It further provided that on the termination date, i.e., July 12, 1954, that the voting trust certificates were to be surrendered by the subscribers and stock certificates were to be issued in exchange therefor.

We have gone into some detail in reciting some of the provisions of the two agreements so that it may form a basis of the court's discussion of paragraph 9 of the complaint, which is an attempt by plaintiff to set forth the acts creating the situations for which he seeks relief. Paragraph 9 alleges that defendants perform acts in breach of their trust relationships under the voting trust agreement, and then under subparagraph (a) complain that they convened meetings of the directors without giving notice thereof to plaintiff and under (b) illegally transacted corporate business in violation of plaintiff's rights. It is plainly evident by the agreements in question that they have nothing whatsoever to do with the directors, directors' meetings or the transaction of corporate business by the directors. In

paragraphs (d), (f), (o), (p) and (q), defendants are charged with illegally issuing dividends, stock bonuses, salaries, gifts, improperly hiring employes and purchasing assets and failing to insist on the collection of corporate claims.

It would appear that no citation would be required to support the legal principle that directors are responsible for the operation of a corporation and not the stockholders and if plaintiff has any legal rights to be adjudicated, they would be derivative ones inuring to the benefit of the corporation and all the stockholders and would not arise through a breach of the voting trust agreement as plaintiff's complaint would indicate. We do not propose at this time to follow through with each of the 17 subparagraphs which we shall consider later when we discuss more specific pleading. From the above, we conclude that plaintiff's bill is multifarious in that it sets forth two distinct causes of action: (1) a stockholders derivative suit seeking restitution of corporate property which the corporate directors have neglected or refused to reclaim, and (2) a personal action seeking relief for the individual plaintiff arising from alleged breaches of the provisions of the restrictive sale and voting trust agreements dated July 12, 1944, to which plaintiff was a party along with two of defendants, and for improper issuance and sales of corporate stock: Hornsby v. Lohmeyer, 364 Pa. 271; Kelly v. Thomas, 234 Pa. 419.

Plaintiff argues that the complaint is not only not multifarious but on the contrary is specifically permitted under Pa. R. C. P. 2229(b). With this we cannot agree. Pennsylvania Rule of Civil Procedure 2229(b) provides as follows:

"A plaintiff may join as defendants persons against whom he asserts any right to relief jointly, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of

transactions or occurrences *if any common question of law or fact affecting the liabilities of all such persons will arise in the action.*" (Italics supplied.)

Counsel for plaintiff contend that the common question of law and fact is the breach by defendants of their fiduciary duty presumably under the voting trust agreement. We have already indicated why we think this is not entirely so. In this case there are unquestionably questions of law or fact which are not common which would affect the rights to relief. There are certain conditions precedent to derivative actions which must be met. For example, plaintiff must comply with Pa. R. C. P. 1506. We also deem it important to maintain a clear delineation between the two causes of action in order to determine the possible applicability of laches or the statute of limitations.

Since the corporation and all of the interested parties have been joined in this action, we shall as was decided in Hornsby v. Lohmeyer, 364 Pa. 271, disregard the formal defect and, instead of considering the merits as was done by the Supreme Court, we will permit plaintiff to amend his pleadings, setting forth in a separate count, in clear, exact and precise language all acts complained of and all relief sought by reason of any acts committed by defendants in violation of the restrictive sales and the voting trust agreements as they relate to the individual shareholders concerned. Likewise, in a separate count, plaintiff must plead in a like manner concerning all acts complained of committed by defendants as directors of the corporation in a derivative action. If the pleadings are properly segregated under each separate action, we see no way in which defendants can be harmed in interposing their defense.

Before discussing each subparagraph of paragraph 9, we call plaintiff's attention to the fact that in paragraph 7 of his complaint he has averred that the voting trust agreement dated July 12, 1944, remains in full

force and effect to this date. This we believe is nothing more than a legal conclusion and it is inconsistent and at variance with the specific provisions of the trust agreement which is attached to and made a part of his pleadings, which specifically sets forth that the trust agreement terminates on July 12, 1954. If plaintiff contends that this trust agreement is still in full force, he must by all means aver specific facts, dates and circumstances which would have the legal effect of extending the terms of this voting trust agreement. To hold otherwise we would find ourselves at the hearing with an averment in plaintiff's pleadings that the agreement was still in effect to which defendant would undoubtedly file a denial, and neither defendant nor the court would have any knowledge of the basis of this averment.

There is yet another reason why defendants' preliminary objections must be sustained. Generally, subparagraphs (a) to (q), inclusive, of paragraph 9 of plaintiff's complaint are decidedly lacking in particularity and so interspersed with vague generalities and legal conclusions that we deem it almost an impossibility that the issues can be intelligently defined by the filing of an answer. Particularity is important and in fact warranted in this pleading for two reasons. First of all, we are covering a period of 16 years of the corporate existence of this corporation and secondly, since plaintiff has had access to all of the corporate books and minutes and has had the benefit of oral examination of the corporate officers and defendants, it ought to be quite easy for him to point to the specific acts complained of, for example, giving the dates of the meetings for which he received no notice or the specific corporate action taken which he claims to be illegal and why.

Keeping in mind the individual rights of plaintiff as opposed to his derivative rights through the corpora-

tion, let us examine each of the subparagraphs of paragraph 9 of plaintiff's complaint.

(a) We deem this paragraph lacking in particularity and the paragraph should indicate the exact dates the meetings were held for which plaintiff received no notice. The only other alternative would be for plaintiff to aver that he never at any time between January 20, 1947, and July 29, 1960, received any notice for any meetings held during that period, specifying whether they were directors or stockholders meetings.

(b) This paragraph is defective for the reason that it pleads a conclusion of law without any particular facts to indicate what corporate business was transacted, when the meetings were held, whether they were regular or special meetings and in what manner any particular action taken violated plaintiff's rights: Narehood v. Pearson, 374 Pa. 299; Ettinger v. Grossman, 1 D. & C. 2d 237.

(c) We deem this paragraph defective for the reason specified in paragraphs (a) and (b). We recognize that plaintiff is endeavoring to avoid the pleading of a legal conclusion by the insertion of the words "by reason of said lack of notice of meetings", but until such time as plaintiff is willing to indicate the dates of the meetings, the circumstances therein involved, and specifically what corporate funds were improperly dispersed, by pleading specific facts, defendant should not be required to file an answer.

(d) We deem this paragraph defective and completely lacking in particularity. Plaintiff is averring that the sum of $27,575.19 was illegally spent by the directors, some in the form of cash, some stock bonuses, some salaries, some gifts, and personal articles. Must we require defendants to peruse the corporation books for 14 years and guess as to what particular items are complained of. Their only alternative would be to gen-

erally deny the allegation. Here dates are extremely important to determine the applicability of the statute of limitations. We furthermore doubt whether the failure to give notice to one director would render void any action to pay salaries, bonuses and other renumeration which would otherwise be legal transactions of the corporation. It would appear that additional facts from which illegality could be determined should be pleaded although the exact dates and specific expenditures we hold to be vitally important and necessary.

(f) We feel that this paragraph is defective. The averment of failure to pay dividends, standing alone, is insufficient. The averment of payment of large sums of cash, of bonuses, gifts, salaries, expense accounts, etc., without alleging that they were excessive or unreasonable or are a result of fraud or an abuse of discretion, do not state a cause of action. Again we would require the amounts, dates paid, and to whom paid for all of the allocations contained in paragraph (f): Hornsby v. Lohmeyer, 364 Pa. 271; Jones v. Motor Sales Company of Johnstown, 322 Pa. 492; Pardee v. The Harwood Electric Company, 262 Pa. 68; Hopkins v. Union Canvas Goods Company, 104 Pa. Superior Ct. 265.

(g), (h), (i), (j), (k), (l). We deem these paragraphs to be a repetition of previous paragraphs.

(m) If paragraph (m) is a duplication of the facts averred in paragraph (e), we would have no comment. Otherwise we deem it defective unless full particulars are given to the issuance of any stock such as date, number of shares, party to whom sold, consideration paid therefor and all other particulars which would indicate that it was a violation of any fiduciary duty.

(n) Paragraph (n) although not specifically objected to by defendants' preliminary objections, appears to the court as rather unusual. Plaintiff himself was a co-trustee according to the voting trust agree-

ment and it would appear that the trustees would come into possession of no funds but would merely vote the shares of stock in accordance with the terms of the agreement. It would not appear to be a case in which any accounting of the administration of a trust would be possible or if possible, would serve any useful purpose. Furthermore, plaintiff has had full access to inspect any records and oral examination of defendant, William K. Ulerich. This paragraph might therefore be deleted.

(o), (p), (q) With respect to paragraphs (e), (o), (p) and (q), we deem them pleaded with sufficient particularity to place defendants on notice of the activity complained of and if pleaded in the proper count would appear to be properly pleaded.

Although the court feels that the statute of limitations or laches will be a very serious obstacle for plaintiff to overcome to a substantial portion, if not all, of plaintiff's claim, we propose not to rule on this question until an amended complaint is filed setting forth with particularity the dates and the transactions involved. At that time we can rule on this question more intelligently and with greater finality. We would suggest to plaintiff's counsel that we have serious doubts as to the applicability of the cases of Hanna Estate, 379 Pa. 136, and Schulz Estate, 374 Pa. 459, on the question of laches. Both of these cases involve actions by beneficiaries of testamentary trusts who were under a legal duty to account to the beneficiaries but had never done so. We seriously question whether any co-trustee or director has such a duty to account to a fellow trustee or director. Accordingly, we enter the following order:

And now, to wit, January 15, 1963, defendants' preliminary objections are sustained and plaintiff is afforded the opportunity to file an amended complaint within 20 days hereof in conformity with this opinion or suffer judgment of non pros.