**In re TUBE METHODS, INC., Debtor.**

**Bankruptcy No. 83–03797G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

May 29, 1987.

Laura H. Boughter and Steven D. Boughter, Gilbertsville, Pa., claimants.

Horace A. Stern, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for the debtor, Tube Methods, Inc.

## MEMORANDUM OPINION

BRUCE FOX, Bankruptcy Judge:

On January 12, 1984, Steven D. Boughter and Laura H. Boughter ("claimants") filed a proof of claim in the amount of $56,-560.00. The claim represents dividends and interest for the period 1970–83 on 675 shares of preferred stock in the debtor corporation. After the debtor objected to the claim, a hearing was scheduled for October 1, 1986. The hearing was continued by agreement. At that time, the court recommended that the claimants, who did not have counsel, retain an attorney to prosecute their claim. The hearing was then held on October 27, 1986. At the hearing, Mr. Boughter appeared on behalf of the claimants, unrepresented by counsel; he stated that the claimants could not afford counsel.

For the reasons set forth below, I will sustain the debtor's objection and disallow the claim in its entirety.

I.

From the evidence submitted at trial, it appears that the claimants have owned the preferred stock since 1959. The stock certificates state that the holders:

> shall be entitled to receive dividends thereon at the rate of six per cent. (6%) per annum, and no more, payable out of any and all surplus and net profits, semi-annually ... as and when declared by the Board of Directors of the corporation before any dividends shall be declared, set apart for or paid on the Common Stock of the Corporation.

From 1960 through 1969, dividends were paid to the preferred stockholders. During nine of those ten years, the debtor had net income after income taxes, although the earning were small. The debtor's financial reports admitted into evidence indicate that, during that ten year period, the debtor's average annual net income was $16,-948.00, representing 0.43% of the company's sales. The dividends paid to the preferred shareholders averaged $28,192.00 yearly.

After 1969, no further dividends were paid. The financial reports admitted into evidence for the period 1970–82 indicate that the debtor lost money in six of those thirteen years. The losses averaged $42,-657.00, or 2.2% of sales, over the thirteen year period. The debtor also sustained losses in 1983, although the record does not quantify the amount.

Nathan Wolf, the president of the debtor, testified that the board of directors had declared no dividends from 1970 to 1983 because the debtor had either sustained losses in the previous year or had not earned sufficient profits to offset the losses of prior years. The financial records corroborate this testimony for the 1970–82 period.

As president of the debtor, Mr. Wolf received a salary from 1970–83. In addition, several members of his family were employed by the debtor during this period:

his son Nathan from 1973–83, his son Randy from 1979–82 and his wife Sally from 1977–80. However, there was no testimony as to the amount of salary they received. Mr. Wolf testified that they were full time employees who earned their salaries through their service to the debtor.

There was also some testimony concerning the debtor's alleged redemption of some of its preferred stock in 1975. Mr. Wolf was not certain whether this occurred. The claimant believes that some preferred shares were redeemed, but there was no testimony as to the amount spent by the debtor or the identity of the selling shareholders.

Finally, the record reflects that Mr. Boughter was a member of the debtor's board of directors during at least some of the period from 1970–83. There is no dispute that the claimants took no legal action, before filing the proof of claim, to assert their claimed right to the payment of dividends.

## II.

The claimants assert that the debtor is liable to them for the dividends which were not paid from 1970–83. Their claim is based on two related theories: (1) that the debtor had an obligation, contractual in nature, to issue the dividends, at least in the years that it earned a profit; and (2) that the failure to issue the dividends was a result of a breach of the board of directors' fiduciary duty to the preferred stockholders as part of an effort to "squeeze out" those shareholders. *See generally* 1 *O'Neal's Oppression of Minority Shareholders* §§ 3.04, 3.05 (2d ed. 1985) ("O'Neal"). For several reasons, I conclude that the claim lacks merit.

■ First, I find that all claims for dividends for the years prior to 1977 are untimely. To the extent the claim asserted is contractual in nature, it is governed by the six year limitations period set forth in 42 Pa. C.S. § 5527. Since there is nothing in the record to suggest that the debtor concealed its dividend policies fom the claimants, it is appropriate to apply the applicable statute of limitations. *See Hornsby v.*

*Lohmeyer,* 364 Pa. 271, 72 A.2d 294 (1950). Pursuant to 11 U.S.C. § 108(c), any claim for nonpayment of dividends arising six years prior to September 29, 1983, the date the debtor filed its chapter 11 petition, are time-barred.

■ The claim asserted is also in the nature of an equitable proceeding to compel the payment of a dividend. 1 *O'Neal* § 3.05, at 3–22 to 3–23. It is hornbook law that equity aids the vigilant, not those who slumber on their rights. *E.g., Witmer v. Exxon Corp.,* 260 Pa. Super. 537, 394 A.2d 1276, 1286 n. 19 (1978), *aff'd,* 495 Pa. 540, 434 A.2d 1222 (1981). In litigation involving shareholder challenges to corporate action, Pennsylvania courts have used the comparable statute of limitations as a guide in evaluating the timeliness of the lawsuit. *Hornsby v. Lohmeyer,* 364 Pa. at 277, 72 A.2d at 299; *see Johns v. Estate of Cheeseman,* 457 Pa. 414, 322 A.2d 648, 651–52 & nn. 5–6 (1974). In this case, where the claimants did not attempt to invoke any internal corporate remedies or judicial remedies for fourteen years, I find it appropriate to bar the claim insofar as the claimants seek to compel a dividend for any year prior to the comparable statute of limitations period.

Second, for the years 1977–83, I conclude that there is no valid contractual right to the payment of dividends. The claimants argue the payment of dividends is part of their fundamental right to share in the net profits of the corporation. They also emphasize that no dividends were issued despite the fact that the debtor earned net profits in 1977, 1978, 1979 and 1980. In making this argument, the claimants fail to consider the "elementary principle of corporation law that the declaration of dividends out of net profits rests in the discretion of the board of directors." *Knapp v. Bankers Securities Corp.,* 230 F.2d 717, 720 (3d Cir.1956); *accord, Kroese v. General Steel Castings Corp.,* 179 F.2d 760, 763 (3d Cir.), *cert. denied,* 339 U.S. 983, 70 S.Ct. 1026, 94 L.Ed. 1386 (1950).

To what extent the net earnings should be distributed among the shareholders depends largely upon the company's need

for accumulated reserves to strengthen its credit, increase its working capital, carry out contemplated projects of expansion, or provide against future hazards.

*Jones v. Costlow,* 349 Pa. 136, 36 A.2d 460, 463–64 (1944).

Judicial review of the exercise of a board of directors' decision regarding the issuance of dividends is subject to the business judgment rule. *See Kroese v. General Steel Castings Corp.*

Under the business judgment rule, a court will not interfere with the judgment of the board of directors absent a showing fraud or gross abuse of discretion. . . . Put another way, courts will not disturb the judgment of the board of directors if it can be attributed to any rational business purpose.

*In re Athos Steel and Aluminum, Inc.,* 71 B.R. 525, 540–41 (Bankr. E.D.Pa.1987) (citations omitted); *accord, Jones v. Costlow.*

█ In this case, the claimants question the debtor's business judgment in declining to issue dividends in those years in which it earned a profit. However, the mere existence of a surplus in a particular year does not create any entitlement to a shareholder dividend. *See Nutis v. Penn Merchandising Corp.,* 610 F.Supp. 1573, 1582 (E.D.Pa. 1985), *aff'd,* 791 F.2d 919 (3d Cir.1986); *Johnson v. Fuller,* 36 F.Supp. 744, 749–50 (E.D.Pa.1940), *aff'd,* 121 F.2d 618 (3d Cir.), *cert. denied,* 314 U.S. 681, 62 S.Ct. 184, 86 L.Ed. 545 (1941); *Jones v. Costlow.* Moreover, the debtor articulated a rational explanation for the failure to issue dividends. In the 1960's, the debtor generated a profit in all but one year. However, the debtor suffered significant losses in 1970–72 and 1974 which were never recouped by the modest profits in 1973–75 and 1977–80; finally, in 1981–82 alone, the debtor experienced losses in excess of $400,000.00. In these circumstances, the court will not upset the debtor's business decision to withhold dividends.

█ Third, I find that the claimants have not established that there was any breach of the directors' fiduciary duties in the decision not to issue dividends. The claim-

ants argue that the failure to issue dividends, the employment of members of Mr. Wolf's family, his failure to recall the precise amount of the salaries paid and the possible redemption of certain shares of preferred stock, taken together, evidence a squeeze out of minority interests in the corporation. *See generally Orchard v. Covelli,* 590 F.Supp. 1548 (W.D.Pa.1984), *defendant's appeal dismissed,* 791 F.2d 916, 920 (3d Cir.1986), *judgment aff'd on plaintiff's appeal,* 802 F.2d 448 (3d Cir. 1986). However, while the corporate actions the claimants refer to may, in some cases, be components of a squeeze out effort, they do not mandate such a conclusion. That is, there is nothing per se improper about stock redemption, or the failure to pay dividends or the employment of members of an officer's family. As outlined in Part I of this memorandum, the evidence presented by the claimants was sketchy and imprecise. I conclude that the evidence does not even sustain a finding that there was "self-dealing" by the corporate officers. In the absence of "self-dealing," corporate action must be evaluated under the business judgment rule, rather than the more stringent "intrinsic fairness" test. *See Matter of Reading Co.,* 711 F.2d 509, 518 (3d Cir.1984); *In re Athos Steel and Aluminum, Inc.,* 71 B.R. at 541 & n. 16. In short, I conclude that the evidence provides no basis for me to find that there was a breach of the directors' fiduciary duty to the preferred shareholders.

At bottom, the claimants appear to have misunderstood the nature of their role in proceeding before this court. They produced a minimal amount of relevant evidence and then stated their "hope" that the court would "scrutinize" the reasons for the debtor's business decisions. (Claimants' Memorandum of Law at 11). Unfortunately, they were unrepresented by counsel and, as a result, did not fully comprehend how to establish their case. Their evidence was insufficient to shift the burden to the debtor to establish the intrinsic fairness of the challenged business decisions; it amounted to no more than a possibility that the debtor acted improperly. On this

record, I cannot conclude that the debtor is liable to preferred shareholders for pre-petition actions taken.

### III.

In their memorandum of law, the claimants have attempted to amend their proof of claim by adding $67,500.00 to their claim. That sum represents the face value of their preferred stock. The debtor objects, arguing that the "amendment" sets forth a new claim which is untimely, since the bar date for filing claims in this case expired on April 11, 1985.

I agree with the debtor that the claimants may not now amend their claim in this fashion. *E.g., In re AM International, Inc.*, 67 B.R. 79, 82 (N.D.Ill.1986); *accord, In re Owens*, 67 B.R. 418, 423 (Bankr.E.D.Pa.1986). In the alternative, if the amendment were allowed, I would disallow the claim. The claimants' legal theory is that their shares have lost their value due to the directors' breach of their fiduciary obligations. I need not decide whether the claim is a shareholder derivative claim or is a personal claim of the shareholders because, in either case, the claim would lie against the directors, not the debtor-corporation, and is therefore not a valid proof of claim. Even if it may be asserted as a claim against the debtor, it would fail, for the reasons set forth in Part II, because the claimants did not prove their case.

An order consistent with this memorandum will be entered.

### ORDER

AND NOW, this 29 day of May, 1987, upon consideration of the proof of claim of Steven D. Boughter and Laura H. Boughter, the debtor's objection thereto and after notice and hearing, it is ORDERED that:

1. The objection is SUSTAINED.

2. The proof of claim is DISALLOWED.