# William Penn Bank v. East Investments, LLC

C.P. of Montgomery County, No. 14-02856

SMYTH, *J.*, June 19, 2015—This is an action to quiet title and for declaratory judgment and other relief arising out of the sale of a certain piece of real property closing "[o]n or around August 31, 2011." (Compl. Quiet Title para. 101.) Plaintiff William Penn Bank is mortgagee, and Plaintiff Muntasir Khandkar is mortgagor/buyer of the property. Defendants East Investments LLC and its principal, Bryan Benford, are involved with a lien held on the property, a confessed judgment, *East Invs., LLC v. F&V Real Estate Mgmt., Inc.*, No. 11-25002 (Pa. C.P. Montg. County filed Aug. 29, 2011), entered several days prior to the land sale and the recording of the deed and mortgage on the property, but which Plaintiffs seek to have stricken in subordination to the mortgage, with title cleared. East Investments and Benford have preliminarily objected under the Pennsylvania Rules of Civil Procedure, Pa.R.C.P. 1028, to Plaintiff's complaint. Three other Defendants, a corporate entity and its principals, are the parties against whom the confessed judgment was taken and were associated with the sale of the property to Khandkar. They have answered the complaint, and are not

directly concerned in the matters now at issue.

The preliminary objections of East Investments and Benford raise three arguments: (1) Under Pa.R.C.P. 1028(a)(3), the complaint does not specifically enough plead facts to demonstrate that East Investments is the alter ego of Benford or sufficient to pierce the corporate veil to allow Benford to be sued in his individual capacity, so that he should be dismissed as a party to the action. (2) Under Pa.R.C.P. 1028(a)(2), the complaint fails to conform to law or rule of court by not pleading fraud with particularity as required by Pa.R.C.P. 1019(b), so that three identified paragraphs of the complaint should be stricken. (3) Under Pa.R.C.P. 1028(a)(4), the complaint is legally insufficient to state a claim against East Investments and Benford, so that the complaint against them should be stricken entirely, with leave to amend.

Plaintiffs have preliminarily objected under Pa.R.C.P. 1028(a)(2) to Defendants' preliminary objections, arguing that they should be dismissed as filed untimely under Pa.R.C.P. 1026(a) because they were interposed more than twenty days after the complaint was served. *See* Pa.R.C.P. 1026(a) ("[E]very pleading subsequent to the complaint shall be filed within twenty days after service of the preceding pleading . . . ."); *see also* Pa.R.C.P. 1017(a)(4) (pleadings include preliminary objections); *cf. Commonwealth v. Morcoal Co.*, 54 Pa.Commw. 87, 419 A.2d 821 (1980) (per curiam) (order disposing of preliminary objections) (sustaining preliminary objection in nature of motion to strike as untimely preliminary objection/demurrer filed twenty-five days after service of complaint). *See generally Chester Upland Sch. Dist. v. Yesavage*, 653 A.2d 1319, 1324 n.8 (Pa. Commw. Ct. 1994) ("[A] party has the right to file preliminary objections raising any appropriate

defenses or objections which that party might have to an adverse party's preliminary objection. The proper method for challenging the propriety of a preliminary objection is by a preliminary objection to a preliminary objection." (citation omitted)). East Investments and Benford have filed a response to Plaintiffs' preliminary objections to preliminary objections, disputing Plaintiffs' rendition of the procedural history of the case, particularly concerning service of the complaint, detailing communications off the record between Plaintiffs' and Defendants' counsel, and attaching to the pleading printouts of various of counsels' emails back and forth to advocate for an alternate version of that history.

Neither side, in the preliminary objections or response, took advantage of the opportunity to engage in discovery on factual issues provided for by our local rules, Montg. Co. R.C.P. 1028(c)(3) and Montg. Co. R.C.P. *205.2(b), or in any event no party has presented the Court with additional evidence to resolve the dispute about when the complaint was served on moving Defendants to start the clock running under Pa.R.C.P. 1026(a) on their time to file preliminary objections. *See also* Pa.R.C.P. 1028(c)(2) ("If an issue of fact is raised, the court shall consider evidence by depositions or otherwise"). *See generally* John M. Stevens, *Procedural Considerations Regarding Preliminary Objections Raising Issues of Fact*, 18 Widener L.J. 149 (2008). Neither side requested oral argument before the Court of their preliminary objections, as they could have done under the same local rules, and so the Court Administrator sent the two sets of preliminary objections to us, albeit at different times and under separate covers, for review on the papers. On this state of the pleadings, counsel clamor for a decision.

Although the Court Administrator sent Defendants' preliminary objections to us first, orderly procedure would dictate that we first take up Plaintiffs' preliminary objections to Defendants' preliminary objections. *Cf. Jacobs v. Merrymead Farm, Inc.*, 799 A.2d 980, 983 (Pa. Commw Ct. 2002) (holding party who preliminarily objects to a preliminary objection does not waive procedural defect in the objection under Pa. R.C.P. 1032(a) and reversing this Court's sustaining defective preliminary objections to which opposing parties had preliminarily objected). Reviewing the procedural facts of record available to us, we find that Plaintiffs' preliminary objections should be sustained, and Defendants' preliminary objections dismissed as untimely filed.

Plaintiffs filed their complaint on February 5, 2014, but failed to achieve service upon East Investments and Benford within the 30 days allowed by Pa.R.C.P. 401(a). After reinstating the complaint under Pa.R.C.P. 401(b), Plaintiffs moved the Court pursuant to Pa.R.C.P. 430 (relating to service pursuant to special order of court) for a special order allowing Benford to be served by alternative means. The motion described Benford as East Investments' "sole owner." (Pls.' Mot. Alternate Service para. 2.) Judge Moore granted Plaintiffs' motion and authorized them to serve the complaint upon Benford by posting it at a certain address in Chester County and sending a copy to that address by regular and certified mail. (Order Alternative Service, June 20, 2014.)

Plaintiffs reinstated the complaint several more times, the final time being on July 22, 2014. On July 29, 2014, the Sheriff of Chester County, as deputized by the Sheriff of Montgomery County, served the complaint by posting it at the designated premises in accordance with Judge Moore's

order for special service; the Sheriff of Montgomery County filed proof of such service on August 13, 2014. On August 15, 2014, Plaintiffs filed an affidavit of service of the complaint and the order for alternative service by certified mail to Bryan Benford at the same address, attaching a returned receipt for the mail dated July 28, 2014, although the signature on the receipt is illegible.

On August 5, 2014, counsel entered appearances in this Court on behalf of East Investments and Benford. However, he did not file their preliminary objections to the complaint until September 12, 2014.

In his response to Plaintiffs' preliminary objections to his preliminary objections, counsel maintains that the address where Plaintiffs attempted to serve East Investments and Benford pursuant to the Court's special order was not a valid address (Defs. Reply Pls.' Prelim. Objections Defs.' Prelim. Objections para. 2 (sic), 4) and offers a series of emails and off-the-record communications between himself and Plaintiffs' counsel as proof of the date he actually received the complaint (Defs. Reply Pls.' Prelim. Objections Defs.' Prelim. Objections para. 2 (sic), 5-8 & Exs. A-B, D). He refers obliquely to having previously received only "an unfiled draft copy of a [c]omplaint via regular mail" (Defs. Reply Pls.' Prelim. Objections Defs.' Prelim. Objections para. 7) and in a supporting brief (which cites no specific legal authority whatsoever) collaterally attacks this Court's order authorizing alternative service by asserting Plaintiff's motion therefore "contains misstatements which would or could have mislead [sic] this Court to grant [the motion]" (Defs. Br. Opp'n Pls.' Prelim. Objections Defs.' Prelim. Objections pt. II). The brief also contends Plaintiffs made no attempt to serve East Investments and that service was not perfected until

counsel filed an acceptance of service (Defs. Br. Opp'n Pls.' Prelim. Objections Defs.' Prelim. Objections pt. II) (which he did contemporaneously with filing Defendants' preliminary objections to the complaint on September 12, 2014). We will not wade into this morass of conflicting off-the-record "facts" and contentions.

In asking us to find their preliminary objections timely filed, moving Defendants seek to challenge the official record of proceedings reflected on the docket of this Court. Had they sought to establish that service of the complaint happened otherwise than the record reflects, Defendants had the chance to do so by requesting discovery on the cover sheets to their preliminary objections and response to Plaintiff's preliminary objections required by our local rules, Montg. Co. R.C.P. *205.2(b) and Montg. Co. R.C.P. 1028(c)(1)(b)(1), (2)(c)(1), and by obtaining or producing such discovery within 60 days of the preliminary objections, Montg. Co. R.C.P. 1028(c)(3). *See also* Pa.R.C.P. 1028(c) (2) ("If an issue of fact is raised, the court shall consider evidence by depositions or otherwise"); John M. Stevens, *Procedural Considerations Regarding Preliminary Objections Raising Issues of Fact*, 18 Widener L.J. 149 (2008). On the cover sheet to their preliminary objections, however, Defendants indicated no discovery was needed; their response to Plaintiffs' preliminary objections was filed without a cover sheet. Defendants have properly placed no facts before this Court that would allow us to go behind the facts as shown on the dockets and records of the Court, or to reexamine decisions made earlier on in the litigation that now stand as the "law of the case," *see Morgan v. Petroleum Prods. Equip. Co.*, 92 A.3d 823, 827 (Pa. Super. Ct. 2014) ("The law of the case doctrine [sets forth various rules that] embody the concept that

a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter"); *Mountain View Condo. Ass'n v. Bomersbach*, 734 A.2d 468, 471 (Pa. Commw. Ct. 1999) (holding "law of the case" cannot be disturbed absent compelling circumstances), *appeal dismissed per curiam as improvidently granted*, 564 Pa. 433, 768 A.2d 1104 (2001).

The allegation Plaintiffs never attempted to serve East Investments strikes this Court as a red herring. Plaintiffs' motion before Judge Moore portrays Benford as East Investments' "sole owner." (Pls.' Mot. Alternate Service para. 2.) Plaintiffs' complaint pleads a case for finding East Investments to be nothing more than Benford's "alter ego," a corporation in name only, and a presently defunct one at that. (Compl. Quiet Title paras. 11-24.) And the docket reflects that our Prothonotary's mailed attempt to serve Judge Moore's order for alternative service upon East Investments at its Nevada address of registration — the same address that East Investments had used in confessing judgment in the related case, *East Investments, LLC v. F&V Real Estate Management, Inc.*, No. 11-25002 (Pa. C.P. Montg. County filed Aug. 29, 2011), and that still appears as East Investments' address on this Court's official dockets in both that case and this one — came back marked "Return to Sender," "No Longer at This Address," "Attempted — Not Known," and "Unable to Forward." If indeed East Investments is an ongoing concern with corporate existence independent of Bryan Benford, it appears to be a tenuous one at best.

Moreover, moving Defendants' counsel entered separate appearances on the docket of this case for both

East Investments and Bryan Benford on August 5, 2014. He was, no later than then, on at least constructive notice that a complaint had been filed, and could easily have converted the constructive notice into actual notice by obtaining a copy of the filed complaint from the docket, regardless of whether Plaintiffs' counsel's attempts to send him or the parties a copy of the complaint by email or postal mail were efficacious.

We compare this case with *Romeo v. Looks*, 369 Pa. Super. 608, 535 A.2d 1101 (1987) (en banc). There, the Superior Court of Pennsylvania affirmed the trial court's denial of a petition to open judgment by default entered against a party who failed to answer substituted service of process that the court had authorized upon her mother and her insurance carrier, among others, although the party failed to receive actual notice of the action in time to prevent the default. The reviewing court found that the substituted service properly established the lower court's personal jurisdiction over the party because the means of service selected were reasonably calculated to provide the party with notice of the suit. *See also Noetzel v. Glasgow, Inc.*, 338 Pa. Super. 458, 469-71, 487 A.2d 1372, 1377-78 (1985) ("As long as a method of service is reasonably certain to give notice to a defendant that an action is pending against him, the fact that such defendant fails to receive actual notice does not invalidate service on due process grounds. The substituted service on the West Virginia Secretary of State in this case and his subsequent notification of Glasgow's West Virginia agent was in fact reasonably calculated to inform Glasgow of the action and was adequate to satisfy due process requirements. Moreover, the notice in this case was received in fact by Glasgow's representatives. The failure to act in

pursuance thereof was attributable either to inadvertence or carelessness. Due process did not require that Glasgow receive repeated notices thereafter. When Glasgow failed to appear in response to initial service, due process did not require that it again be invited to participate in the proceedings. Appellees were not required to obtain Glasgow's permission to proceed further" (citation omitted)).

In the absence of competent proof to the contrary, or an appropriately raised collateral attack on Judge Moore's order approving special service, the Sheriff's return of service reflecting posting of the complaint at the designated premises on July 29, 2014, in accordance with Judge Moore's order, established that as the date the complaint was served. Counsel's entry of appearances for both East Investments and Benford on August 5, 2014, merely confirmed that those parties or their representatives had received actual notice of the lawsuit, and they were then under obligation to ascertain the stage of the litigation and proceed accordingly. Since under Pa.R.C.P. 1026(a) "every pleading subsequent to the complaint shall be filed within twenty days after service of the preceding pleading" moving Defendants' preliminary objections to the complaint were due August 18, 2014. If necessary, Defendants could have sought more time to respond, by motion to the Court or by agreement of Plaintiffs' counsel, see Pa.R.C.P. 1003 ("Rules relating to the manner of commencing an action or the time for serving process or for filing or serving pleadings may be waived by agreement of the parties. The court on cause shown may extend or shorten the time within which pleadings shall be filed or process served"), but subject to the proviso, "Agreements of attorneys relating to the

business of the court shall be in writing . . . ." Pa.R.C.P. 201, not through an amorphous chain of off-the-record emails and phone calls between counsel that Defendants ask us to sift through to ascertain an agreed due date for Defendants' pleadings (which Plaintiffs vociferously contest in any event).

Under our calculation, Defendants' preliminary objections filed September 12, 2014, were 25 days late under Pa.R.C.P. 1026(a). We have discretion to refuse to strike preliminary objections based on a brief delay in their filing. *See Ambrose v. Cross Creek Condos*, 412 Pa. Super. 1, 11, 602 A.2d 864, 868 (1992). On the other hand, Plaintiffs have properly preserved their challenge to the late filing of Defendants' preliminary objections by preliminarily objecting to them, *see Jacobs*, 799 A.2d at 983; *see also Yesavage*, 653 A.2d at 1324 n.8 ("[A] party has the right to file preliminary objections raising any appropriate defenses or objections which that party might have to an adverse party's preliminary objection. The proper method for challenging the propriety of a preliminary objection is by a preliminary objection to a preliminary objection" (citation omitted)), and have not answered or briefed them on the merits. We exercise our discretion to sustain Plaintiffs' preliminary objections to Defendants' preliminary objections and dismiss them as untimely filed. *See also, e.g., Vision Serv. Plan v. Pa. AFSCME*, 326 Pa. Super. 474, 474 A.2d 339, *appeal after remand*, 331 Pa. Super. 217, 480 A.2d 322 (1984) (affirming refusal to open default judgment entered against defendant who tried to file preliminary objections without a supporting brief one day beyond extension granted by plaintiff's counsel); *Morcoal Co.*, 54 Pa.Commw. 87, 419 A.2d 821 (order disposing of

preliminary objections) (sustaining preliminary objection in nature of motion to strike as untimely preliminary objection/demurrer filed twenty-five days after service of complaint); *Delgrosso v. Gruerio*, 255 Pa. Super. 560, 389 A.2d 119 (1978) (upholding order reinstating default judgment and dismissing preliminary objections filed one day beyond period trial court had allowed under Pa.R.C.P. 1003 in prior order opening judgment); *cf. Peters Creek Sanitary Auth. v. Welch*, 545 Pa. 309, 681 A.2d 167 (1996) (finding no abuse of discretion in trial court's grant of plaintiff's oral motion to strike answer to complaint as late under Pa.R.C.P. 1026(a) despite plaintiff's failure to move for judgment by default and establishing that party filing late pleading must show just cause for delay before opponent must show prejudice from lateness); *McCullough v. Clark*, 784 A.2d 156, 158 (Pa. Super. Ct. 2001) (Eakin, J.) ("Where the untimely filing of preliminary objections is not excused and would prejudice the opponent, those objections must be dismissed as waived. . . . The [opponent] need not establish prejudice in order to prevail; the burden is on the defendant to provide a basis for the untimely motion." (citation omitted)); Montg. Co. R.C.P. 1028(c)(1)(b)(2), (4)(a) ("All preliminary objections shall be filed . . . along with . . . a brief or memorandum of law . . . . If the brief . . . is not *timely* filed . . . the assigned Judge may: (a) Dismiss the preliminary objections where the moving party has failed to comply . . . ." (emphasis added)).

Alternatively, we have reviewed the substance of Defendant's preliminary objections. Were their merits properly presented to us, we would overrule them.

A tenet of advocacy we are fond of advises, "Give the best argument first." Lynn Bahrych, Legal Writing in a

Nutshell 20, 224 (4th ed. 2009). If Defendants in their preliminary objections have followed this wise dictum, we question at the outset whether any of them can have merit, because the first argument raised lacks all validity.

That argument is that Bryan Benford should be dismissed as a party to the action basically because,

10. Plaintiffs have merely alleged that East Investments, LLC[,] is the alter ego of Defendant Bryan Benford. No facts have been plead [sic] to allow Defendants to respond to these baseless allegations.

11. It is premature to permit the filing of an action against an individual without the corporate veil having been pierced or, at the very least, without the allegations of specific facts that would support such a claim could succeed.

(Defs. Prelim. Objections Pls.' Compl. paras. 10-11.)

On this issue, the complaint pleads, in part, as follows:

11. Upon information and belief, East Investments, LLC[,] is a defunct Nevada corporation, formed on May 20, 2004, with a former address of 2232 South Nellis Blvd [sic], Las Vegas, NV 89104.

12. At all times material hereto, East Investments transacted business in the Commonwealth of Pennsylvania as an unregistered, foreign corporation without authorization from the Commonwealth of Pennsylvania.

13. Upon information and belief, East Investments was not adequately capitalized.

14. Upon information and belief, East Investments did not follow corporate formalities such as the appointment of directors, issuance of stock, the holding of annual meetings of board members and shareholders, updating minutes and bylaws, [or] filing annual reports with the State of Nevada, or in the maintenance of its books and records.

15. Upon information and belief, East Investments did not, at any time material hereto, own any property or have any assets.

16. Upon information and belief, East Investments did not, at any time material hereto, have an office in Pennsylvania, have any employees, or engage in any business transactions aside from the loan transactions described in greater detail below.

17. It is believed and therefore averred that East Investments was organized and established for the sole purpose of participating in a 2004 real estate transaction described in greater detail below[, presumably the sale to other Defendants of the property at issue later sold to Plaintiffs].

. . . .

19. Upon information and belief, [Defendant Bryan Benford] was never registered with the Nevada Division of Corporations as an officer, director, or agent of East Investments.

20. At all times material hereto, Benford transacted business in the name of East Investments in Pennsylvania, as set forth in more detail below, but was not authorized to do so.

21. Upon information and belief, at all times material hereto Benford exerted sole financial interest in and control over East Investments as set forth in more detail below.

22. Upon information and belief, Benford and East Investments commingled their respective personal and corporate assets as set forth in more detail below.

23. Upon information and belief, Benford transacted his own personal business in the name of East Investments in order to shield himself from certain tax and other liabilities.

24. Thus, it is believed and therefore averred that, at all times relevant hereto, East Investments was the alter ego of Benford.

(Compl. Quiet Title paras. 11-24.)

The standards guiding a court's review of preliminary objections in Pennsylvania have long been in effect:

Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. The test on preliminary objections is whether it is clear and free from doubt from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his right to relief. To determine whether preliminary objections have been properly sustained, this Court must consider as true all of the well-pleaded material facts set forth in [the] complaint and all reasonable inferences that may be drawn from those facts.

*Bower v. Bower*, 531 Pa. 54, 57, 611 A.2d 181, 182 (1992) (citations omitted), *quoted in In re Raymond G. Perelman*

*Charitable Remainder Unitrust*, 113 A.3d 296, 303 (Pa. Super. Ct. 2015); *Commonwealth ex rel. Nicholas v. Pa. Labor Relations Bd.*, 545 Pa. 288, 292, 681 A.2d 157, 159 (1996); *Discover Bank v. Stucka*, 33 A.3d 82, 86 (Pa. Super. Ct. 2011).

Under these standards, we have no difficulty finding Plaintiffs' complaint satisfies, at the pleading stage, the requirements in Pennsylvania for showing a corporation is the alter ego of an individual and for piercing the corporate veil on that basis, as set forth in, *e.g.*, *Allegheny Energy Supply Co. v. Wolf Run Mining Co.*, 53 A.3d 53, 58 n.7 (Pa. Super. Ct. 2012) (quoting *Ashley v. Ashley*, 482 Pa. 228, 237, 393 A.2d 637, 641 (1978)):

> The party seeking to establish personal liability through piercing the corporate veil must show the person "in control of a corporation [used] that control, or [used] the corporate assets, to further his . . . own personal interests[.]" . . . [T]he alter ego theory [for piercing the corporate veil] requires proof (1) that the party exercised domination and control over [the] corporation; and (2) that injustice will result if corporate fiction is maintained despite unity of interests between corporation and its principal.

In fact, Plaintiffs' complaint appears to us to be a textbook pleading for piercing the corporate veil on the theory that East Investments was the alter ego of Benford. Of course, past the stage of preliminary objections, Plaintiffs will have to prove their allegations to satisfy the standard for "piercing the corporate veil" and to hold Benford to account for East Investments' actions.

Defendants' preliminary objections next argue all allegations of fraud and misrepresentation against moving Defendants and three identified paragraphs of the complaint making those allegations should be stricken from the complaint under Pa.R.C.P. 1028(a)(2) for failure to conform to law or rule of court, specifically Pa.R.C.P. 1019(b) ("Averments of fraud...shall be averred with particularity").

> The Rule that "[a]verments of fraud . . . shall be averred with particularity," Pa.R.C.P. 1019(b), is one of the express bases for the motion for specificity, its object being to dispel "the alluring generality of the term 'fraud,'" when it appears without basic factual allegations. However, the motion for specificity cannot be used to make a party plead purely evidentiary matters; and the requirements of precision and detail are more easily met where the matters involved are equally or more in the knowledge of the objecting party.

*Local No. 163, Int'l Union of United Brewery, Flour, Cereal, Soft Drink & Distillery Workers v. Watkins*, 417 Pa. 120, 122-23, 207 A.2d 776, 778 (1965) (footnote omitted) (quoting *Hornsby v. Lohmeyer*, 364 Pa. 271, 276, 72 A.2d 294, 298 (1950)). Moreover, in this, as in other determinations as to whether a complaint's allegations are sufficiently specific,

> [I]t is not enough to focus upon one portion of the complaint. Rather, in determining whether a particular paragraph in a complaint has been stated with the necessary specificity, such paragraph must be read in context with all other allegations in that complaint. Only then can the court determine whether the defendant has been put upon adequate notice of the claim against

which he must defend.

*Yacoub v. Lehigh Valley Med. Assocs.*, 805 A.2d 579, 589 (Pa. Super. Ct. 2002) (en banc), *quoted in Rachlin v. Edmison*, 813 A.2d 862, 870 (Pa. Super. Ct. 2002) (en banc).

In drawing our attention to three isolated paragraphs of the complaint as insufficiently pleading fraud (Defs. Prelim. Objections Pls.' Compl. paras. 17-19 (citing Compl. Quiet Title paras. 124, 130, 132)) the preliminary objections ignore the remainder of the complaint, including a lengthy and detailed recitation of the factual history of the case (Compl. Quiet Title paras. 11-123) that provides grounds for at least an inference that moving Defendants knowingly and intentionally waited till the eleventh hour before the closing on the sale to Plaintiffs of the land in question before perfecting the confessed judgment against the other Defendants (essentially, the seller(s) of the property) despite their long prior history of default and nonpayment on the obligations the judgment sought to secure, or re-secure, as the case may be.

We find the allegations and inferences of fraud or misrepresentation made out by the complaint sufficient to survive a preliminary objection charging lack of particularity. Of course, to prove fraud ultimately, Plaintiffs, after appropriate opportunity for post-pleading discovery, would have to meet the standards laid down by case law, *e.g.*, *Blumenstock v. Gibson*, 811 A.2d 1029, 1034 (Pa. Super. Ct. 2002) (setting forth elements of fraud in a real-estate transaction), *quoted in Youndt v. First Nat'l Bank*, 868 A.2d 539, 545 (Pa. Super. Ct. 2005), if indeed "fraud" in the classic sense is even essential to Plaintiffs' claims against moving Defendants: The only counts the complaint pleads against East Investments and Benford are

to quiet title and for a declaratory judgment to have their lien on the property nullified. There is no count against them labelled "fraud" (though there is against the other three Defendants). "Unclean hands" might be a more apt description of what the complaint is alleging with respect to moving Defendants' acquiring their judgment lien (*see* Pls.' Prelim. Objections Prelim. Objections Defs. para. 2). *See, e.g., Equibank v. Adle, Inc.*, 407 Pa. Super. 553, 595 A.2d 1284 (1991) (discussing equitable doctrine of "unclean hands" in dispute over priority between mortgage and mechanics' lien).

The third and final argument of Defendants' preliminary objections, presumably the one they are least confident in since they have saved it for last, *cf.* Bahrych, *supra* ("Give the best argument first"), demurs generally under Pa.R.C.P. 1028(a)(4) that the complaint's claims against East Investments and Benford to quiet title and for declaratory judgment are insufficient to pass legal muster. "A demurrer is a preliminary objection that the pleadings fail to set forth a cause of action upon which relief can be granted under any theory of law." *Regal Indus. v. Crum and Forster, Inc.*, 890 A.2d 395, 398 (Pa. Super. Ct. 2005); *cf.* Pa.R.C.P. 1020(c) ("Causes of action . . . may be pleaded in the alternative").

> The standard for reviewing preliminary objections in the nature of a demurrer is limited. All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be

resolved in favor of overruling it. *Mahoney v. Furches*, 503 Pa. 60, 66, 468 A.2d 458, 461-62 (1983).

*McMahon v. Shea*, 547 Pa. 124, 129, 688 A.2d 1179, 1181 (1997) (plurality opinion) (affirming reversal of order sustaining demurrer).

Defendants' third argument is not what we would call a traditional demurrer under these standards. Essentially, it consists of a list of other remedies aside from attacking moving Defendants' judgment that Plaintiffs might avail themselves of, and casts blame back on Plaintiffs and the other Defendants for not discovering/disclosing Defendants' judgment lien on the property prior to closing on the sale. (Defs. Prelim. Objections Pls.' Compl. paras. 31-37.) While these theories may be proper to raise in an answer to the complaint or as affirmative defenses in new matter in a responsive pleading, *see* Pa.R.C.P. 1030(a), or in a cross-claim against the other Defendants, we find no relevance to a preliminary objection demurring to the complaint for legal insufficiency. *Cf. Jacobs*, 799 A.2d at 984 ("[The] preliminary objection in the nature of a demurrer rises to the level of an improper speaking demurrer which must be rejected. The objection assumes facts not appearing in the pleading to which it responds. The trial court erred in considering and ruling upon the merits of [the] preliminary objections" (citation omitted)); *Cardenas v. Schober*, 783 A.2d 317, 321-22 (Pa. Super. Ct. 2001) ("Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer"), *appeal granted in part*, 568 Pa. 713, 797 A.2d 909 (2002); *Elling v. Callas*, 334 Pa. Super. 32, 34, 482 A.2d 1065, 1066 (1984) (holding

trial court erred in sustaining improper speaking demurrer that raised facts not pled in complaint).

Having reviewed each of Defendants' preliminary objections, we find them lacking in merit. They are overruled.

The Court hereby *orders* as follows: Plaintiffs' preliminary objections to Defendants' preliminary objections are *sustained*, and Defendants' preliminary objections are *dismissed*. Defendants' preliminary objections are also *overruled* on the merits. Under Pa.R.C.P. 1028(d), moving Defendants shall have the right to plead over to Plaintiffs' complaint within *20 days* after notice of this order.